HELEN SPERRY LEA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD G. SPERRY, EXECUTOR OF THE ESTATE OF ELMER A. SPERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD G. SPERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELMER A. SPERRY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD G. SPERRY, ADMINISTRATOR OF THE ESTATE OF ZULA A. SPERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 74287, 74296, 74297, 74298, 74299.

Promulgated January 12, 1937.

244

*Francis L. Casey, Esq., Walter S. Orr, Esq.,* and *A. C. Newlin, Esq.,* for the petitioners.

*J. E. Marshall, Esq., J. L. Devany, Esq.,* and *Paul Waring, Esq.,* for the respondent.

OPINION.

DISNEY: 1. The petitioners contend that they acquired the Patent Corporation stock in a nontaxable transaction within the meaning of section 112 (g) and (i) (1) (B) of the Revenue Act of 1928, set forth in the margin,[1] and, accordingly, that it was proper for them to report the profit they derived from the disposition of the stock as capital gain. The respondent adheres to the conclusion he reached in the determination of the deficiencies, that the transfer of the assets to the Patent Corporation did not result in a reorganization and that the fair market value of the patents is taxable to the petitioners as an ordinary dividend.

---

[1] SEC. 112. (g) *Distribution of stock on reorganization.*—If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

&ast; &ast; &ast; &ast; &ast; &ast;

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means &ast; &ast; &ast; (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.

In *Helvering* v. *Gregory*, 69 Fed. (2d) 809; affd., 293 U. S. 465, the taxpayer owned all the stock of A corporation, which owned shares of stock of B corporation. For the purpose of enabling her to sell the stock of B corporation for her individual profit, and to reduce income tax liability, she organized C corporation, to which B corporation's stock was transferred for the issuance of C's stock to the taxpayer. Three days later C corporation dissolved and liquidated by distributing its assets, consisting of B's stock, to the taxpayer. In holding that the transfers were not within the meaning of the statute, the court remarked:

\* \* \* But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident, egregious to its prosecution. To dodge the shareholders' taxes is not one of the transactions contemplated as corporate "reorganizations."

\*  \*  \*  \*  \*  \*  \*

\* \* \* All these steps were real, and their only defect was that they were not what the statute means by a "reorganization," because the transactions were no part of the conduct of the business of either or both companies; so viewed they were a sham, though all the proceedings had their usual effect. \* \* \*

Herein, in exchange for part of the assets of the Development Co., the petitioners, as sole stockholders thereof, received, pro rata, all of the capital stock of the Patent Corporation without surrendering any of their Development Co. stock. So far as these facts are concerned, the transaction could be said to be in conformity with the words of section 112 (i) (1) (B). But it is now settled by the *Gregory* case that to come within the meaning of that provision, the substance of the transfer must agree with its form and it must be "in pursuance of a plan of reorganization" to make it nontaxable, as under subdivision (g), the applicable provision here. Did the substance of the transaction herein agree with its form? Was the stock "distributed in pursuance of a plan of reorganization"?

The petitioners argue that the facts here meet the business purpose test laid down in the *Gregory* case. If after the transfer to the Patent Corporation the stock distribution made to the petitioners was "in pursuance of a plan of reorganization", was a business purpose, their contention should be sustained. But an analysis of all the evidence discloses to us that the transfer to the Patent Corporation and the distribution of its stock was not germane to the conduct of any business purpose of the Development Co.'s business or properties, or to intent to operate them as the business of the Patent Corporation.

The offer of the Development Co. to exchange the assets for stock of the Patent Corporation, the acceptance of the offer, the transfer of

the assets for stock, the issuance of the stock and the sale of the stock so acquired by the wife and children of Elmer A. Sperry to him at a price in conformity with the selling price of the patents and patent rights, and the liquidation of the Patent Corporation and distribution of the patents as liquidating dividend to Elmer A. Sperry, all occurred on January 18, 1929, as parts of a transaction used for convenience to place Elmer A. Sperry in a position to sell the patents directly to the Sperry Gyroscope Co. The Patent Corporation was used merely as a conduit through which to pass the title, although it had been decided prior to the transfer of the assets to the Patent Corporation, that the purchaser should take title to the patents through Elmer A. Sperry, instead of purchasing the stock of the Patent Corporation as originally contemplated.

The situation is indistinguishable on principle from that passed upon by us in *Robert R. McCormick, Executor*, 33 B. T. A. 1046, and the facts are closely analogous to those in that case. Therein we held that within the intendment of the revenue act there was no reorganization, and that the corporate acts of the several entities involved were valid and effect must be given thereto, where the newly created corporation, in consideration of properties transferred, issued its stock to the original corporation, corresponding to the Development Co. herein, and such stock was issued to the stockholders of the original corporation as a dividend. Following that case, we conclude that the Patent Corporation and all of the transactions between it and the Sperry family served no corporate business purpose, but constituted, as in the *Gregory* case, "an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else", and we hold that the stock distribution herein was not "in pursuance of a plan of reorganization."

2. By regarding the patents and patent rights as a dividend by the Development Co., taxable at their fair market value of $1,000,000, the respondent adopted the procedure he followed in the *Gregory* case. While it did not fully agree with the Commissioner's method, the Circuit Court of Appeals in that case approved the result on the ground that the tax was the same whether the Commissioner's method was adopted or the tax was computed on the value of the shares of stock of the new corporation. No question appears to have been raised in that case as to the amount of earnings available for dividends. Herein, prior to the submission of the proceedings the parties stipulated that at the time the Development Co. exchanged the patents and patent rights for stock of the Patent Corporation it had earnings of not less than $51,015.28 available for dividends. After the briefs were filed a further stipulation was filed agreeing that after such transfer the earnings subject to dividend payments

were not more than that sum unless increased by earnings or profits derived from the sale of the assets.

On brief the petitioners contend that, if we rule against them on the reorganization question (as we have done), the dividend taxable to them should be limited to $51,015.28 and that the remainder of the amount of $1,000,000 ultimately received for the patents and patent rights should be applied against the cost of their stock of the Development Co.

The statute defines the term "dividend" as "any distribution made by a corporation to its shareholders, whether in money or in other property, out of earnings or profits accumulated after February 28, 1913." Sec. 115 (a), 1928 Act. If any distribution is not out of earnings or profits, the amount is treated as a return of capital to the extent of the shareholder's basis of his stock. Sec. 115 (d). The extent of the earnings or profits of the Development Co. in excess of $51,015.28 available for dividends depends upon the amount of earnings or profits, if any, it derived from the disposition of the patents and patent rights.

In *Robert R. McCormick, Executor, supra*, we held also that the dividend declared by the Tribune Co., corresponding to the Development Co. herein, was an ordinary taxable dividend. Herein the dividend was not actually declared, but a distribution may be taxed as a dividend without corporate action formally declaring same. *Hadley* v. *Commissioner*, 36 Fed. (2d) 543, affirming 6 B. T. A. 1031; *Smith* v. *Moore*, 199 Fed. 689; *Spencer* v. *Lowe*, 198 Fed. 961.

The transaction herein resulted in a disposition for $1,000,000 of corporate assets having a cost basis of $108,758. The Development Co. constructively received this amount for the benefit of its stockholders, the petitioners. *Royal Marcher*, 32 B. T. A. 76. The profit of $891,242 derived from the exchange when added to the $51,015.28 agreed earnings increased its earnings available for dividend payments to $942,257.28. *Robert R. McCormick, Executor, supra;* *Lynch* v. *Hornby*, 247 U. S. 339. The Development Co. is not before us and it is not necessary to decide whether or not the profit so realized constitutes taxable income to it.

We hold that of the $1,000,000 received by the petitioners, $942,-257.28 constitutes a distribution of earnings of the Development Co., taxable to them in proportion to their stock holdings, the remainder being a return of capital. To that extent we sustain the determination of the respondent that the petitioners received taxable dividends from the Development Co.

Reviewed by the Board.

*Decision will be entered under Rule 50.*