162

Vincent H. O'Donnell, of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Bernard K. Chertcoff, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT and STEPHENS, Circuit Judges, and McCORMICK, District Judge.

GARRECHT, Circuit Judge.

The facts and questions of law involved are similar in five cases which have been consolidated.

The facts as stipulated by the parties were adopted by the Tax Court as its findings of fact.

John H. Wheeler Company was organized as a corporation under the laws of the State of California in the year 1925 by John H. Wheeler and Frances V. Wheeler, his wife. In the years following the organization of said company, and until the year 1929, said John H. Wheeler and Frances V. Wheeler transferred to said company securities having a cost to them of $304,683.49 in exchange for 4,918 shares of the common capital stock of said company. On the dates of exchange the securities transferred to John H. Wheeler Company for said 4,918 shares of its common capital stock had an aggregate fair market value of $491,800.

In computing the gain or loss realized for federal income tax purposes on the sale of the particular securities which it had acquired following its organization, John H. Wheeler Company used the cost basis of said securities to its transferors, John H. Wheeler and Frances V. Wheeler.

In its books of account, said John H. Wheeler Company computed gain or loss on the sale of said particular securities by using the fair market value of the securities which were transferred to the corporation by John H. Wheeler and Frances V. Wheeler, as stated above.

On November 30, 1938, the books of account of the John H. Wheeler Company were closed and they showed a deficit of $47,501.61. This deficit was caused principally by losses on the sale of securities acquired by the corporation following its organization computed on the basis of the fair market value of said securities at the time that they were transferred to the John H. Wheeler Company.

On December 2, 1938, John H. Wheeler, the decedent, Frances V. Wheeler, Elliott H. Wheeler, Cornelia W. Good and Ysabel

F. Berliner and Rollo C. Wheeler (the latter not being involved in any of these proceedings) were the holders of all of the outstanding shares of stock of the John H. Wheeler Company.

On said December 2, 1938, after giving consideration to the application of Section 112(b) (7) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1044, the stockholders of the John H. Wheeler Company dissolved said corporation and all of its assets were distributed in liquidation during the month of December, 1938, proportionately to the stockholders of said company.

Pursuant to the provisions of Section 112(b) (7) of the Revenue Act of 1938, John H. Wheeler, Frances V. Wheeler, Elliott H. Wheeler, Cornelia W. Good, and Ysabel F. Berliner executed written elections on Form 964 to have recognized and taxed in accordance with said section the gains on the shares of the capital stock of the said John H. Wheeler Company owned by them on December 2, 1938. Said individuals, in filing the federal income tax returns for the year 1938, reported as long-term capital gains their proportionate share of the securities acquired by the John H. Wheeler Company subsequent to April 9, 1938, and the cash which was distributed in liquidation. The distribution in liquidation was completed during the month of December 1938, as required by the 1938 law.

No claim is made by the respondent that the proceedings taken by the John H. Wheeler Company and its stockholders to dissolve the said company and distribute its assets under Section 112(b) (7) of the Revenue Act of 1938 were defective or incomplete. Pertinent provisions of said Act are printed in the margin.[1]

More than two years after the liquidation of the corporation and after tax returns thereon had been made, Congress en-

---

[1] "(7) **Election as to recognition of gain in certain corporate liquidations.** (A) General rule.—In the case of property distributed in complete liquidation of a domestic corporation, if—

"(i) the liquidation is made in pursuance of a plan of liquidation adopted after the date of the enactment of this Act, whether the taxable year of the corporation began on, before, or after January 1, 1938; and

"(ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within the month of December, 1938—

then in the case of each qualified electing shareholder (as defined in subparagraph (C) ) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F).

"(B) **Excluded corporation.**—The term 'excluded corporation' means a corporation which at any time between April 9, 1938, and the date of the adoption of the plan of liquidation, both dates inclusive, was the owner of stock possessing 50 per centum or more of the total combined voting power of all classes of stock entitled to vote on the adoption of such plan.

"(C) **Qualified electing shareholders.**—The term 'qualified electing shareholder' means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subparagraph (A) has been made and filed in accordance with subparagraph (D),

\* \* \* \* \*

"(D) **Making and filing of elections.**—The written elections referred to in subparagraph (C) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary. The filing must be within thirty days after the adoption of the plan of liquidation, and may be by the liquidating corporation or by the shareholder.

"(E) **Noncorporate shareholders.**—In case of a qualified electing shareholder other than a corporation—

"(i) There shall be recognized, and taxed as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of December 31, 1938 but without diminution by reason of distributions made during the month of December, 1938; and

"(ii) There shall be recognized, and taxed as short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after April 9, 1938, exceeds his ratable share of such earnings and profits."

acted Section 501(a) of the Second Revenue Act of 1940, 26 U.S.C.A. Int.Rev. Acts.[2]

Subsequently, on February 12, 1942, the Commissioner of Internal Revenue asserted a deficiency in the tax returns of 1938.

The Commissioner in his claim for deficiency did not follow the provisions of Section 112(b) (7) of the Revenue Act of 1938, but instead made use of the 1940 Act. The formula adopted by the Commissioner is shown by the following figures:

Fair market value of 4,918 shares of Wheeler Co. stock or fair market value of securities exchanged therefor, set up on corporate books as cost of securities .......... $491,800.00

Cost of securities to decedent and wife transferred by them to Wheeler Co. for its stock   304,684.49

Excess of corporate book value over transferors' cost ......  187,115.51

Less deficit on corporate books as of December 31, 1938 ....   47,501.61

Surplus as of December 31, 1938, based on transferors' cost ...................... 139,613.90

Less excess of book value over transferors' cost of securities unsold at liquidation of Wheeler Co. ..............   6,800.52

Accumulated earnings and profits as of December 31, 1938 available for distribution to 4,918 shares of stock $132,813.38

The petitioners' computation of earnings and profits of Wheeler Co. differs from that of respondent in that petitioners assert that the earnings and profits of the John H. Wheeler Co. should be computed on the basis of cost to the company of the securities transferred to it in exchange for its 4,918 shares of stock, or on the basis of the fair market value of the securities on the date of transfer, and not the cost of the securities to the transferors as used by respondent in his computation of the deficiencies.

The Commissioner used the cost of the securities to Mr. and Mrs. Wheeler, the transferors at the time they acquired them, years before the formation of the corporation, as a basis for computing "earnings and profits," and he disregarded the increased market value they admittedly had at the time they were acquired by the corporation.

---

[2] "(l) **Effect on Earnings and Profits of Gain or Loss and of Receipt of Tax-Free Distributions.**—The gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation—

"(1) for the purpose of the computation of earnings and profits of the corporation, shall be determined, except as provided in paragraph (2), by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; but

"(2) for the purpose of the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain. Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made. Where in determining the adjusted basis used in computing such realized gain or loss the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings or profits, then the latter adjustment shall be used in determining the increase or decrease above provided. Where a corporation receives (after February 28, 1913) a distribution from a second corporation which (under the law applicable to the year in which the distribution was made) was not a taxable dividend to the shareholders of the second corporation, the amount of such distribution shall not increase the earnings and profits of the first corporation in the following cases:

"(1) No such increase shall be made in respect of the part of such distribution which (under such law) is directly applied in reduction of the basis of the stock in respect of which the distribution was made.

"(2) No such increase shall be made if (under such law) the distribution causes the basis of the stock in respect of which the distribution was made to be allocated between such stock and the property received."

In other words, the respondent asserts that the gains which appear to inhere in the securities as computed by him, although unrealized by the shareholders, should nevertheless be classed as "earnings and profits" and taxed to petitioners as dividends. He claims as authority for his position Section 501(a) of the Second Revenue Act of 1940. On the other hand, petitioners claim full compliance with the Act of 1938.

The language of the decision of the Tax Court betrays an animus against petitioners because they were stockholders in this John H. Wheeler Company, which was a personal holding company and which, as it is suggested, was made use of for the purpose (although within the law) of tax evasion. The courts have held that it was permissible for taxpayers to avail themselves of such legal means; petitioners should not be condemned if such were the fact, which does not appear in this record. See Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830.

It is also suggested that the dissolution of the company, likewise, was motivated by purposes of tax avoidance. This conclusion is also outside of the record.

Other statements of the Tax Court not supported by the record are that the Wheeler Company would have been liquidated by its stockholders even if Section 112(b) (7) of the Revenue Act of 1938 had not been enacted into law. The Tax Court's opinion also seems to question the good faith of the liquidation of the corporation under this 1938 Act, in view of the attitude of the Commissioner firmly adhering to his regulation and refusing to abide by or acquiesce in court decisions.

These assumptions unconsciously create an atmosphere of prejudice which might easily impair an impartial approach to the issues to be determined.

Admittedly, Section 112(b) (7) was enacted for the purpose of encouraging and facilitating prompt liquidation of personal holding companies. To apply the construction here contended for by the Commissioner would not have furnished such or any encouragement for liquidation.

The construction placed upon the statute submitted by petitioners does not result in tax avoidance to stockholders but reflects a fair postponement of tax to the extent of so much of the tax as is here sought to be imposed on such an assumed portion of gain to the stockholders as may be represented as an estimate of increase of the value of the assets distributed, which gain has not been actually realized either by the corporation or the stockholders.

The increase or appreciation in value of corporate assets will be reflected in any gain realized by stockholders when actually converted upon liquidation.

Section 112(b) (7) of the Revenue Act of 1938 provides that upon complete liquidation of a domestic corporation under subsection (7) there shall be recognized and taxed as dividends the ratable share of the earnings and profits of the corporation accumulated after February 28, 1913. The petitioners contend that the term "earnings and profits" of the corporation for the purposes of Section 112(b) (7) should be computed in accordance with the rules and decisions of the courts which hold that "taxable income" is not the equivalent of "earnings and profits" and that on disposition by a corporation of property acquired by the corporation in exchange for its stock in a transaction wherein gain is not recognizable for the purposes of computing "taxable income," the basis of such property to the corporation for the purpose of determining "earnings and profits" available for distribution of dividends *is the cost of the property to the corporation at the time of the exchange.* The Government's contention is that Congress resolved this question by enacting Section 501(a) in 1940, and that earnings and profits should be computed by applying the provisions of this law. Section 501 provides specifically that it shall apply to the 1938 law. The question for our consideration is whether this amendment can be applied to the voluntary liquidation of a corporation completed in the year 1938 pursuant to the Revenue Act of 1938 which by its very terms was to be effective and operative only during and for the year 1938.

The petitioners contend that Section 501 of the Second Revenue Act of 1940, if properly construed, is not applicable to voluntary liquidation and dissolution of a corporation commenced and completed in 1938, but if it is construed to be applicable to a liquidation completed in 1938 such construction violates the rule of "permissible retroactivity" and that therefore Section 501 is unconstitutional as in violation of the due process clause of the Fifth Amendment to the Constitution of the United States.

The petitioners have cited a number of cases which support their contention that the basis for determining "earnings and profits" is the cost of the property to the corporation at the time of the exchange.[3] The Government contends this is in error but cites no cases. The Government in its brief points out that the Commissioner lost some of these cases involving the interpretation of the words "earnings and profits" but that he never receded from his position. Indeed, upon the argument before this court counsel for appellant boasted that the Commission had flouted the court and absolutely refused to abide by its holdings and continually relied for its authority solely on Article 115.3, Treasury Regulations.[4] The Government in elaborating further on this point says that finally the passage of the Second Revenue Act of 1940, particularly Section 501(a), made effective the Government's position on this point. It is our belief, however, that the cases do not support the Commissioner's position, for if they had it, would not have been necessary for the Commissioner to base this case on Section 501(a) of the Second Revenue Act of 1940 or to have awaited for the enactment of such legislation before applying such interpretation of earnings and profits to the liquidation of the Wheeler Company.

Furthermore, in the very recent case of Estate of Fisher et al. v. Commissioner, — T.C. —, where the Tax Court held that Section 501(c) of the Revenue Act of 1940 did not apply as the case was pending on September 20, 1940, the Tax Court held that the case was not controlled by the Revenue Act of 1940 but was rather controlled by the decisions *which hold that the basis of determining earnings and profits is the fair market value when acquired.* There is no question but that this was the law when the dissolution of the Wheeler Corporation took place in 1938 and it is still the law where the Revenue Act of 1940 is not applicable.

The Government has based its case on the assumption that this Revenue Act of 1940 was clarifying legislation. It is true that Section 501 in its original draft re-cited that it was clarifying legislation, but this was eliminated before its passage. This position is untenable because the Commissioner's determination on earnings and profits had been challenged and, as the Government states, "the Commisioner lost some of these cases." While Section 501 specifically endorsed his position, still, if the law were clearly to the contrary as it was here, the section in question can not be said to be clarifying. It is obvious that it is a subsequent enactment in the law to obviate the force of the contrary court decisions and to change the law to give support to the Commissioner's position.

We come to the real point in issue—whether the legislation in question is permissibly retroactive when applied to the dissolution of the Wheeler Company in 1938.

First, it must be pointed out that Section 501(a) of the Second Revenue Act of 1940 was passed by Congress in the second year after the corporation was dissolved and income tax paid and there were three Revenue Acts passed between the dissolution of the Wheeler Company and the enactment of Section 501(a).

The rule is that revenue acts are not unconstitutional merely because they are retroactive [Untermeyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 58 L.Ed. 596; Hecht v. Malley; 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949], whenever the imposition seemed consonant with justice and the conditions were not such as would ordinarily involve hardship. Untermeyer v. Anderson, supra.

In the year 1938, the Supreme Court decided the case of Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 127, 83 L.Ed. 87, 118 A.L.R. 1142. In that case we find the best summary and statement of the law in respect to retroactive legislation:

"The equitable distribution of the costs of government through the medium of an income tax is a delicate and difficult task. In its performance experience has shown the importance of reasonable opportunity for the legislative body, in the

---

3 Ayer v. Com'r, 12 B.T.A. 284; McKinney v. Com'r, 32 B.T.A. 450; Weyerhaeuser v. Com'r, 33 B.T.A. 594; Lea v. Com'r, 35 B.T.A. 243; W. S. Farish & Co. v. Com'r, 38 B.T.A. 150; W. & K. Holding Corp. v. Com'r, 38 B.T.A. 830; A. and J., Inc., v. Com'r, 38 B.T.A. 1248; Elmhirst v. Com'r, 41 B.T.A. 348.

4 * * * Gains and losses within the purview of section 112 or corresponding provisions of prior Acts are brought into the earnings and profits at the time and to the extent such gains and losses are recognized under that section.

revision of tax laws, to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources and amounts of the various classes of taxable income during the taxable period preceding revision. Without that opportunity accommodation of the legislative purpose to the need may be seriously obstructed if not defeated. We cannot say that the due process which the Constitution exacts denies that opportunity to legislatures; that it withholds from them, more than in the case of a prospective tax, authority to distribute the increased tax burden in the light of experience and in conformity with accepted notions of the requirements of equal protection; or that in view of well established legislative practice, both state and national taxpayers can justly assert surprise and complain of arbitrary action in the retroactive apportionment of tax burdens to income at the first opportunity after knowledge of the nature and amount of the income is available. And we think that the 'recent transactions' to which this Court has declared a tax law may be retroactively applied, Cooper v. United States, 280 U.S. 409, 411, 50 S.Ct. 164, 74 L.Ed. 516, *must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment.* [Also, United States v. Hudson, 299 U.S. 498, 500, 57 S.Ct. 309, 81 L.Ed. 370.]

"The Joint Resolution of Congress of July 4, 1864, No. 77, 13 Stat. 417, imposed an additional tax on incomes earned during the calendar year 1863, this tax being imposed after the taxes for the year had been paid. In Stockdale v. Insurance Companies, supra, [20 Wall. 323], page 331 [22 L.Ed. 348]. Mr. Justice Miller said of it: 'The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted, * * * no one doubted the validity of the tax or attempted to resist it.' The Act of February 24, 1919, c. 18, Tit. 2, 40 Stat. 1057, 1058-1088, which taxed incomes for the calendar year 1918, was applied without question as to its constitutionality in United States v. Robbins, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285, and in other cases.

"In the present case the returns of income received in 1933 were filed and became available in March 1934. Wisconsin Stats.1933, § 71.09(4). The next succeeding session of the legislature at which tax legislation could be considered was in 1935, when the challenged statute was passed. By § 11, Art. 4, § 4, Art. 5, of the Wisconsin constitution, and § 13.02 Wisconsin Statutes, 1935, regular sessions of the legislature are held in each odd-numbered year. Special sessions of the legislature may be held on call of the governor, at which no busines can be transacted 'except as shall be necessary to accomplish the special purposes for which it was convened.' A special session was called by the governor in 1934, but for purposes unrelated to taxation. Proclamations of the Governor of Wisconsin December 2, 28, 1933, January 18, 22, 30, 1934. Thus the legislature in 1935, *at the first opportunity after the tax year in which the income was received,* made its revision of the tax laws applicable to 1933 income, as did Congress in the Joint Resolution of July 4, 1864, commented on in Stockdale v. Insurance Companies, supra." [Emphasis added.]

We feel that the statement of the law as to tax legislation in the case of Welch v. Henry is not only reasonable but is the best statement of the law and should be followed in deciding the instant case.

The Government has cited two cases on retroactive legislation: D. W. Klein Co. v. Commissioner, 7 Cir., 123 F.2d 871, and Wilgard Realty Co. v. Commissioner, 2 Cir., 127 F.2d 514. In the first case the Revenue Act of 1939 provided that it should be effective with respect to the Revenue Act of 1924 and other Revenue Acts. However, at no point in that case was the question of the retroactive nature of the legislation raised. In the latter case the period of retroactivity was about seven years. The court there found that the petitioner had done nothing it would not have done had the law been, when the exchange was made, exactly what the 1939 enactment later made it. The taxpayer was therefore not the victim of any injustice. We believe the present case can be distinguished.

The case at bar differs from all the other cases considered here in that the dissolution of the corporation and payment of tax were made under a section of the Revenue Act of 1938, which by its very terms was effective and operative *only* for the year 1938. This was a special law and in order to come within its provisions dissolution of the corporation had to be com-

168

pleted by December 31, 1938. There is no question but that if this section of the Revenue Act of 1938 had been repealed expressly by the Revenue Act of 1939 codifying the Internal Revenue Laws, this 1940 amendment to the 1938 Act would be a mere superfluity. It is impossible to amend a law that no longer exists. It would seem equally unreasonable to permit the amendment of a law after some legislative sessions have passed—where the law by its own terms is no longer effective.

■ There is no question but that laws, particularly internal revenue laws, can be retroactive. However, the courts have held that there is a point of time when such retroactivity is beyond the legislative power. The rule that such amendment to legislation must come within the next session of the legislature or within a reasonable length of time as analyzed in the Welch v. Henry case, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142, is the sounder law.

■ There has been some emphasis of the fact that the Revenue Act of 1940 specifically provides that Section 501(a) shall apply to the Revenue Act of 1938 and other prior acts. We concede that this provision shows a clear intent on the part of the legislature but we believe that if Congress has not the power to pass legislation which does not come within the rule of permissible retroactivity, the fact that the legislation recites it shall be so retroactive does not cure the defect.

Reversed.