CITY NATIONAL BANK OF CLINTON et al., appellants, v. IOWA STATE TAX COMMISSION et al., appellees.

No. 49957.

(Reported in 102 N.W.2d 381)

April 5, 1960.

Dickinson, Throckmorton, Parker, Mannheimer & Raife,

of Des Moines, and Edward C. Halbach, of Clinton, for appellants.

Norman A. Erbe, Attorney General of Iowa, and Gary S. Gill, Special Assistant Attorney General, for appellees.

LARSON, C. J.—The issues presented on this appeal arise by reason of constitutional objections to the provisions of section 6, chapter 208, Laws of the Fifty-sixth General Assembly, which amended section 422.7, Code of Iowa, 1954, to provide as follows:

"The term 'net income' means the adjusted gross income as computed for federal income tax purposes under the Internal Revenue Code of 1954, with the following adjustments: [1. and 2. not applicable here.]

"3. Where the adjusted gross income includes capital gains or losses, or gains or losses from property other than capital assets, and such gains or losses have been determined by using a basis established prior to January 1, 1934, an adjustment may be made, under rules and regulations prescribed by the state tax commission, to reflect the difference resulting from the use of a basis of cost of January 1, 1934, fair market value, less depreciation allowed or allowable, whichever is higher. Provided that the basis shall be fair market value as of January 1, 1955, less depreciation allowed or allowable, in the case of property acquired prior to that date if use of a prior basis is declared to be invalid."

These issues are: (a) Is this legislation which attempts to or does permit the taxing of capital gains as income which occurred prior to the effective date of chapter 208, Laws of the Fifty-sixth General Assembly, January 1, 1955, an illegal retroactive tax, so unfair, unjust and unreasonable as to be a violation of the due process clause of the Federal and State Constitutions; and (b) Is the legislation which attempts to tax capital gains wholly invalid as being illegally incorporated by reference, in violation of section 7, Article VII, of the Iowa Constitution?

The trial court denied appellant relief, holding that "Section 1 of the 14th Amendment to the Constitution of the United

States and Section 9 of Article I of the Constitution of the State of Iowa insuring plaintiffs [taxpayers] due process of law are not violated by taxing income realized by sale although such income or enhanced value was experienced prior to January 1, 1955, because realization of gain is the basis of the tax, not unrealized increase in value", and also that plaintiff had failed to establish any unconstitutional delegation of authority by incorporating by reference the provisions of the Federal Internal Revenue Code of 1954 in the Iowa income-tax law. We agree.

In sharp contrast to the law on the first issue, the facts herein are quite simple, clear and undisputed. Arthur Peyton Bryant, a resident of Clinton County, Iowa, died February 3, 1935. Included among the assets of his estate passing to appellants herein, as trustees of the Bryant Trust, were certain shares of corporation capital stock, valued for federal estate tax purposes at $32,495. Through various stock dividends and corporate reorganizations they became 3139 shares of Clinton Foods, Inc. common stock, which was carried on the New York stock exchange, and as of January 1, 1955, had a total fair market value of $133,407.50.

In 1956 the corporation was liquidated and appellants received the sum of $134,977 for this stock. The appellant-taxpayer reported a capital gain as income in the 1956 return of $4708.50. By an error in computation $130,268.50 had been taken as the fair market value of the stock on January 1, 1955, and the sum reported was the alleged taxable income or gain subject to capital gains tax.

The Iowa State Tax Commission, appellees herein, determined that the capital gain which should have been reported was $103,484, which was the difference between $134,977, the amount received for the stock, and $32,495, the value of that investment when it came into the trust at the death of Bryant February 3, 1935, adjusted for an interim cash distribution during that period of $1002.

Therefore, under the state's computation the sum subject to capital gain tax, as income, was $103,484, and as computed by the taxpayer-appellant, using the base cost as the stock's

value on January 1, 1955, the effective date of this Act, the capital gain subject to income taxes was $1569.50.

Appellants contend the increase in value of the stocks or capital gain from February 3, 1935, to January 1, 1955, on the latter date, was accrued value, principal or capital, and was never classified, recognized or considered income in Iowa until after the enactment of chapter 208, Acts of the Fifty-sixth General Assembly; that in fact it had been excluded from the classification of gross income in this jurisdiction so that taxpayers could and did rely upon such accrued increases in value as capital or increased principal; that any attempt to retroactively make this increased value "income", and as such subject to an income tax for a period of more than 20 years past, would be so unfair, unjust and arbitrary that it would violate the due process clause of both the Federal and State Constitutions, and be void.

On the other hand, it is the state's contention that we must use the broadly understood definition of "income" as any increase or gain in value of property, real or personal, over its cost, and that the state may tax that gain or profit at any time it is realized by conversion or sale; that in so taxing increases in value of capital assets, the term realized may, without violating constitutional law, be used not only to mean the time of payment of a tax on income, but fix the measurement of the tax as well. It further contends that by fixing the cost basis as the value of property when received, or its actual cost, or the fair market value on a date or event in the past, and taxing as income the amount received for that asset in excess of the fixed cost basis, the profit or gain becomes evident and detached from the principal, as realized income, and is taxable at that time, and this in no way constitutes a violation of any constitutional guarantee.

This is the first case of that nature before our court, but the question has been raised in the federal as well as several state courts, with a sharp difference of opinion, not only between different jurisdictions, but even among the members of the courts in those jurisdictions. It is not unusual to find 4 to 4, or 4 to 3, decisions on this question.

I. Although it is the rule generally recognized that revenue laws may be retroactive, it is also true that there is a point of time when such retroactivity is beyond the legislative power. Wheeler v. Commissioner of Internal Revenue, 9 Cir., 143 F.2d 162; Cooper v. United States, 280 U. S. 409, 411, 50 S. Ct. 164, 74 L. Ed. 516. In the Cooper case it was held that "recent transactions" to which this tax law may be retroactively applied must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment. United States v. Hudson, 299 U. S. 498, 500, 57 S. Ct. 309, 81 L. Ed. 370. As stated in the Wheeler case, supra, 143 F.2d at 168, even though the provision shows a clear intent on the part of the legislature, if the Congress has not the power to pass legislation "which does not come within the rule of permissible retroactivity, the fact that the legislation recites it shall be so retroactive does not cure the defect."

In Welch v. Henry, 305 U. S. 134, 147, 59 S. Ct. 121, 125, 83 L. Ed. 87, 118 A. L. R. 1142, a leading case on this point, it was held that in determining whether a taxing statute is a denial of due process because of its retroactive operation it is necessary in each case to consider the nature of the tax and the circumstances in which it is laid, before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation. It was therein pointed out that those cases wherein due process was violated "rested on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event." Nichols v. Coolidge, 274 U. S. 531, 542, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. In other words, if the taxpayer is reasonably forewarned, it would not be held oppressive. Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809.

Recent transactions taxable retroactively to be valid would seem to be extended no further than two years, or up to the adjournment of the last previous legislative session, so that, as appellants argue, if this attempt to fix the cost basis herein

was in fact retroactive taxation during a period of 20 years between 1935 and 1955, it would clearly be unreasonable and a violation of the due process clause of our Constitution. People ex rel. Beck v. Graves, 280 N. Y. 405, 21 N.E.2d 371. However, by the clear weight of authority, unless the language of a statute expressly or by necessary implication requires a retroactive construction, the courts will not give it such meaning and thereby find the statute in violation of due process. People ex rel. Beck v. Graves, supra; Welch v. Henry, supra, 305 U. S. 134, 59 S. Ct. 121, 83 L. Ed. 87, 118 A. L. R. 1142. See Cooper v. United States, supra, 280 U. S. 409, 411, 50 S. Ct. 164, 74 L. Ed. 516, as to application of receipts of income in prior years being retroactive. United States v. Hudson, 299 U. S. 498, 57 S. Ct. 309, 81 L. Ed. 370.

██ II. The nub of this controversy, therefore, seems to be whether or not the fixing of a cost basis as February 3, 1935, when the stock was acquired, instead of January 1, 1955, the effective date of the legislation first subjecting capital gains to a tax as a part of gross income, was clearly a retroactive tax, or by its language may be construed as a tax solely on a profit in the year of its realization.

Appellants rely heavily upon the case of State ex rel. Bundy v. Nygaard, 163 Wis. 307, 310, 158 N.W. 87, 88, L. R. A. 1917E 563. In that case, in September 1907, realtor purchased at par shares of common and preferred stock of a corporation as an investment, and on February 20, 1914, sold the stock at an over-all advance of $104,000. He was assessed, as income for 1914, the proportionate amount of such profit which the time between January 1, 1911, and the date of sale bore to the entire time between the date of purchase and the date of sale. There was no substantial difference in value of the stock between January 1, 1911, and the date of sale. The Wisconsin income-tax law provided for the levying of a tax on incomes received during the year ending December 31, 1911, and defined income to include all profits from the sale of capital assets. It was held that income therein was used in its common ordinary meaning, and meant the profit or gain derived from capital or labor, or from both combined, in the form of money or something equiva-

lent thereto, and since there had been no *advance in the value of the stock* during the time covered by the assessment, its value before that time was considered capital and was not assessable as income. The Wisconsin court said: "When the Income Tax Law was first passed in 1911 the stock in question was held by the plaintiff and was then of the value of $214,000." That value, it said, was property value or capital, and that "No part of it could be made into income by legislative enactment." Therefore, this property value was subject to taxation as property under the uniformity rule, but not otherwise. Thus, appellants argue legislation which subjects this gain to an income tax later is clearly a retroactive tax, and is unreasonable, arbitrary, capricious, and unjust.

The State Tax Commission, on the other hand, relies on a number of cases stating the opposite view, beginning with Norman v. Bradley, 173 Ga. 482, 160 S.E. 413, which was cited with approval in MacLaughlin v. Alliance Ins. Co., 286 U. S. 244, 52 S. Ct. 538, 76 L. Ed. 1083, and followed in the Kentucky case of Fidelity & Columbia Trust Co. v. Reeves, 287 Ky. 522, 154 S.W.2d 337, and the California case of Fullerton Oil Co. v. Johnson, 2 Cal.2d 162, 39 P.2d 796. All of these decisions were split decisions except the California one, which was a per curiam opinion.

In the Bradley case the Georgia Income Tax Act became effective August 22, 1929, and provided for the taxation of income received on or after January 1, 1929. It also incorporated by reference the provisions of the Federal Reserve Act which used the March 1, 1913, value, or cost, as the basis for determining depreciation, depletion, etc. Two taxpayers sold previously purchased stock in February 1929, and a third sold his stock in October of 1929. The increase in value of the stock, in both instances, had admittedly occurred prior to the enactment of the statute. The tax collector assessed all of the increase in value over cost as income for 1929, and the Georgia Supreme Court was evenly divided with respect to the tax on the profit from the sales made in February before the Act was passed. However, all but one judge agreed that the profit from the sale made in October was taxable as income, even though all of it

accrued prior to the passage of the taxing Act. The basis of that decision was that the Act was aimed at *profits* from the sale or other disposition of property, and that such *profits are taxable as income when received;* that profit may exist before the sale in the form of increased value, but gets to be income only at the time of realization by sale. It was held that unrealized value may exist which is not taxable as income, but which does become taxable as income immediately upon its realization by the owner of the property; that "accrued profits do not become income until realized by sale, but upon such realization they are taxable immediately as income." (Page 487 of 173 Ga., page 415 of 160 S.E.)

In the MacLaughlin case it was stated at page 248 of 286 U. S. and 539 of 52 S. Ct.: "The company contends that so much of the gain as accrued before the effective date of the taxing Act was capital, which could not constitutionally be taxed under the Sixteenth Amendment", which is appellant's position herein. As to the Federal question (page 250 of 286 U. S.), the court said: "The fact that a part of the taxed gain represented increase in value after that date [March 1, 1913], but before the present taxing act, is without significance. Congress, having constitutional *power to tax the gain, and having established a policy of taxing it* [emphasis supplied] * * * may choose the moment of its realization and the amount realized, for the incidence and the measurement of the tax. Its failure to impose a tax upon the increase in value in the earlier years, assuming without deciding that it had the power, cannot preclude it from taxing the gain in the year when realized, any more than in any other case, where the tax imposed is upon realized, as distinguished from accrued, gain. If the gain became capital by virtue of the increase in value in the years before 1928, and so could not be taxed as income, the same would be true of the enhancement of value in any one year after the adoption of the taxing act, which was realized and taxed in another. But the constitutionality of a tax so applied has been repeatedly affirmed and never questioned. The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it repre-

sents enhanced value in an earlier period before the adoption of the taxing act." (Citing cases)

In the Fullerton Oil Company case the California court agreed with the Georgia court and the reasoning in the Mac-Laughlin case. It held there was no significance in the fact that the court in the MacLaughlin case limited the gain to a period after the effective date of the Sixteenth Amendment, and believed the cost basis could be established whenever the taxpayer purchased the property, or at some subsequent time desired by the legislature. It stated on page 168 of 2 Cal.2d, page 798 of 39 P.2d: "We can see no constitutional difference between accretions to capital prior to the date of the taxing statute and those occurring subsequent thereto. If increases in the value of property constitute income, and constitute income in the year in which realized rather than in the years when such increases in value accrue, it would seem that constitutionally speaking it makes no difference when such increases in value accrue— whether before or after the effective date of the taxing statute." (Citing Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, and Helvering v. Canfield, 291 U. S. 163, 54 S. Ct. 368, 78 L. Ed. 706, which held that dividends declared and paid from profits and surplus accumulated prior to March 1, 1913, constituted "income" to the recipients and not "capital.") It was also pointed out by the California court that Federal courts had established the principle that "income" within the meaning of the Income Tax Act is "realized gain" and that such realized gain is taxable in the year of its realization regardless of when it accrued. Of course such policies and pronouncements though not binding upon us in passing on the question for the first time in Iowa, yet they are entitled to serious consideration and are usually found very persuasive.

In the Reeves case the Kentucky court reviews most of the authorities on this question including the Bradley, MacLaughlin, and Fullerton Oil Company cases, and held categorically that the tax imposed "is not a tax on property", that taxable event is the sale of the securities; that the cost basis or the "taking the value of the property as of date of acquirement as a basis for fixing the gain, where property is sold in the year of the

enactment", is not "arbitrary or unreasonable, or in conflict with any provision of either the State or Federal Constitutions." (Page 535 of 287 Ky., page 343 of 154 S.W.2d)

Obviously, if these authorities are applicable here, and if we agree with those conclusions, we must hold that such taxing Act is not retroactive, that unrealized capital gains are not separate property, and that until the gain or profit is taken there is no taxable income. A holding that the law taxes the profit as such when it is taken would avoid a decision invalidating this legislation, upon the grounds that it is an illegal retroactive tax. It is, of course, our duty to adopt such a view if the same can be reasonably justified. Considerable respectable authority has reached that conclusion on this issue. Although we have great respect for the decisions of the Wisconsin Supreme Court, we feel obliged to follow the majority view, which is also the more recent, and therefore hold this method of taxing capital gain does not amount to a retroactive tax.

III. Appellants further contend the attempt here to include as income the gains accrued prior to January 1, 1955, was an attempt to reclassify such profits which had been specifically excluded as "gross income" in the original Income Tax Act of 1934, thereby permitting such gains to be considered as capital increases. They argue that, as property so designated, it is unjust and unfair to now include this gain in value as "income" by a mere change in the taxing law. The charge is not without merit, but it seems the complaint is to the wrong forum. It should be made to the legislature. Its authority in this field is quite broad, and while most taxpayers at some time or other think that they are treated unfairly in tax matters, there is very little the courts can do to help them. Unless there is a clear case of constitutional violation, the legislature's will in that field is usually conclusive, right or wrong.

It is true the history of our income-tax law seems to indicate some legislative about-face as to the status of capital gains. The first income-tax law in Iowa became effective January 1, 1934. It defined "net income" in section 7, of chapter 82, Acts of the Forty-fifth General Assembly, Extraordinary Session, to

mean "the gross income of the taxpayer less the deductions allowed by this division."

Section 8 of said chapter provided:

"1. The term 'gross income' includes gains, profits and incomes derived from salaries, wages, or compensation for personal service, * * *, or re-occurring profits and income growing out of the ownership or use of or interest in property, real or personal; * * * or gains or profits, and income derived from any source whatever and in whatever form paid. The amount of all such items shall be included in the gross income of the tax year in which received by the taxpayer, unless, under the methods of accounting permitted under this division, any such amounts are to be properly accounted for as of a different period.

"2. The term 'gross income' does not include the following items, which shall be exempted from taxation under this division:

"a. Capital gains and profits arising from the sale or exchange of real or personal property of the taxpayer. * * *."

These provisions of the Iowa income-tax law have remained the same since their enactment, until they were changed by chapter 208, Acts of the Fifty-sixth General Assembly, in April 1955, which according to section 21 thereof provided: "This Act shall be used as a basis for computing income tax for all tax years commencing after December 31, 1954." The Act redefined "net income" and "taxable income" by reference to the Federal Internal Revenue Code of 1954, with the adjustments set forth in section 6 thereof, now appearing as section 422.7, Code of Iowa, 1958. It provides: "The term 'net income' means the adjusted gross income as computed for federal income tax purposes under the Internal Revenue Code of 1954", but with the adjustments specified in section 422.7 plus the Iowa income tax deducted in computing said taxable income and minus federal income taxes as provided in section 422.9. Its application to estates and trusts is found in section 422.6, Code, 1958.

Thus for the first time since the adoption of an income-tax law in Iowa, capital gains became a part of gross income as provided in the Internal Revenue Code of 1954, on January 1, 1955. Clearly any gain realized thereafter was subject to the

Iowa income tax, but it must be conceded a troublesome question arose as to whether or not the gain accrued, though not realized by sale or conversion prior to January 1, 1955—in this case amounting to a $103,484 increase in value from February 3, 1935, to January 1, 1955—should be subject to the tax. Even the legislature had some doubts as to its propriety, if not its legality, as indicated in the so-called saving clause appearing in section 422.7(3), Code, 1958. Its propriety, of course, is for the legislature. Its legality is being tested in this suit.

The Supreme Court in State ex rel. Bundy v. Nygaard, supra, 163 Wis. 307, 158 N.W. 87, 88, L. R. A. 1917E 563, was convinced that taxation of prior gains, even though unrealized, was so unjust and arbitrary as to be void. However, the general rule in that regard is well settled. If the taxpayer is reasonably forewarned that such a gain may later be taxed, the imposed tax usually will not be found unjustly oppressive or void. Also see Milliken v. United States, supra, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809; Welch v. Henry, supra, 305 U. S. 134, 59 S. Ct. 121, 127, 83 L. Ed. 87, 118 A. L. R. 1142; Cooper v. United States, supra, 280 U. S. 409, 411, 50 S. Ct. 164, 74 L. Ed. 516; People ex rel. Beck v. Graves, supra, 280 N. Y. 405, 21 N.E.2d 371; Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087.

Upon this issue we then inquire whether appellants could reasonably and justly rely and depend upon the *exclusion provision* in the original Income Tax Act of 1934, stating that increases or gains accruing prior to January 1, 1955, were not income under our law. Were they substantially and wrongfully misled in their belief that under the circumstances existing, accrued capital increases would thereafter be used as the cost basis of such assets rather than the actual cost or the reasonable market value in 1955, or some later date, in computing taxable income? If so, is the tax now imposed so unfair, unjust and unreasonable as to invalidate it as violative of the due process clause, section 9, of Article I, of the Constitution of the State of Iowa? We are unable to answer these questions in the affirmative, at least to such an extent as to declare section 422.7(3) unconstitutional. While it may seem somewhat unfair to reach

back of January 1, 1955, for a cost basis, yet under the well-known constitutional presumption or rule we are not able to find it so unjust, arbitrary, capricious, and unreasonable as to violate due process.

While the state may have in other manners recognized increased value in capital assets and taxed that value, yet in the field of income taxes, by taxing only profit when realized, it must be held here that it was free to use the cost price or any other cost basis it deemed just, in order to arrive at the profit. Olvey v. Collector of Revenue, 233 La. 985, 99 So.2d 317, and cases cited therein. True, this may result in double taxation, but of course that fact alone is not sufficient to avoid the tax.

It must be conceded that while capital gains were not included as income in our income-tax law prior to January 1, 1955, yet the exclusion was little more than an exemption, and the public should have been aware that such exemption could be removed at any session subsequent to the enactment of the income-tax law in 1934. Milliken v. United States, supra, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809; MacLaughlin v. Alliance Ins. Co., supra, 286 U. S. 244, 52 S. Ct. 538, 76 L. Ed. 1083, and citations; Cooper v. United States, supra, 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516. Also see Commissioner of Corporations and Taxation v. Williston, 315 Mass. 648, 54 N.E.2d 43, 151 A. L. R. 1395.

It is our conclusion that, while it may seem unjust to tax accrued gain before the law made such a gain subject to an income tax, yet, under the circumstances disclosed, its action here did not violate the legislature's power or authority to do so.

IV. Appellants' contention that the statute falls within the scope of section 7, Article VII, of the Iowa Constitution, in that the reference to the Federal Internal Revenue Act of 1954 is to fix a tax rather than for the purpose of classification, definition or procedure has no merit. As far as the issues in this action are concerned, the Iowa tax law simply refers to the Federal Act for the purpose of defining "taxable income", and the object and amount of the tax is clearly set forth in what is now chapter 422, Code of Iowa, 1958. See chapter 208, Acts of the Fifty-sixth General Assembly, sections 1, 4, 5 and 6.

: In Ballard-Hassett Co. v. Local Board of Review, 215 Iowa 556, 558, 559, 246 N.W. 277, we passed on this very question and held that a statute which provided that "moneyed capital" within the meaning of section 5219 of the federal statutes shall be assessed in a certain manner and at the same rate as imposed on the stock of certain banks does not violate the constitutional requirement that in the imposition of a tax "it shall not be sufficient to refer to any other law to fix such tax." It would serve no useful purpose to repeat the reasoning therein, but we may point out here, as was done there, that it is quite apparent that the only purpose in the reference to the federal statutes is for a definition of "adjusted gross income" and to broaden the definition of "gross income" in our prior law to include such income as that on capital gains under the federal definition. No attempt is made to make the construction or interpretation of such definitions by federal authorities the law in Iowa, and they are not given power to determine or fix the Iowa tax. In other words, the reference is not for the purpose of "fixing such tax" and "so long as this is not the purpose of the reference, the plaintiff has no complaint." It was further pointed out in the Ballard-Hassett Company case that the right to cross-reference to statutes in other states or to federal statutes is quite uniformly recognized. Also see Norman v. Bradley, supra, 173 Ga. 482, 160 S.E. 413; Brown v. State, 323 Mo. 138, 19 S.W.2d 12; Ex parte Burke, 190 Cal. 326, 212 P. 193; Texas Co. v. Dickinson, 79 N. J. L. 292, 75 A. 803.

As to appellants' contention that it is confusing and misleading to make one go to the Federal Internal Revenue Act to find what is "taxable income", we are not unmindful of the fact that few, if any, subject to the Iowa income tax, would not already be well aware of the taxable income provisions of the Federal Revenue Act of 1954, as amended, prior to the effective date of our law. Practically, it is therefore less confusing to have such a term mean the same thing to the taxpayer subject to both of these revenue-producing Acts. Although as a general rule legislation by reference is to be avoided, in this case we find no such violation of section 7, Article VII, as to make the references here unconstitutional.

Although space will not permit a full discussion of all of appellants' arguments advanced, we have considered all of them carefully, as well as the presumptions as to constitutionality and the rule requiring strict construction of taxing statutes, but we feel compelled to follow the majority view and thus hold herein that there was no unconstitutional authority exercised by the legislature in enacting section 6, chapter 208, Laws of the Fifty-sixth General Assembly, and that the assessment of personal net income tax in the sum of $1957.18 and accrued interest by the State Tax Commission, affirmed by the trial court, is correct and proper.—Affirmed.

GARFIELD, HAYS, THOMPSON, PETERSON, GARRETT, and THORNTON, JJ., concur.