NORMAN, tax-commissioner *v.* BRADLEY *et al.*

No. 8056.    SEPTEMBER 23, 1931.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, R. C. Norman,* and *Park & Strozier,* for plaintiff in error.

*Slade & Swift, Spalding, MacDougald & Sibley, Harold Hirsch,* and *Marion Smith,* contra.

BECK, P. J. This case arises under the act "to provide for levying and collecting a tax on net incomes in this State, approved August 22, 1929, which act is generally referred to as the Boykin income-tax act. The act provided that the tax levied under it for 1929 should be assessed pro rata for one fourth of that year. The controlling question in the case may be stated in a general way as, what is taxable as income for 1929? But, to bring it within the issues made by the pleadings and facts in this case, it is more specifically stated thus: Where taxpayers sold corporate stock in February and October, 1929, and realized profits thereon, all of which had accrued prior to 1929, are such profits taxable as income for that year?

Bradley, Turner, and Glenn, the defendants in error, owned stock in the Coca-Cola Company, all of which was purchased prior to 1929. Bradley and Turner sold their stock at a profit in February, 1929. Glenn sold his at a profit in October, 1929. The profit on the stock so sold by them all accrued prior to January 1, 1929. Norman, the State tax-commissioner, sought to tax these profits as income under the Boykin act. Plaintiffs brought suit in Fulton superior court to enjoin the collection of income tax on these profits as a part of income. The petition as amended set out the facts stated above, and alleged further that the profits sought to be taxed represented an appreciation in capital assets and not income; that none of such appreciation is subject to income tax under the Boykin act; and that in so far as it undertakes to subject such profits to taxation, the Boykin act is violative of the Federal and State constitutions, because it is retroactive, because it deprives petitioners of their property without due process of law, and because it is an attempt to tax property under a statute not uniform. There were other allegations attacking the provisions of the law regarding contests by taxpayers, and seeking to justify resort to injunction, which are not here material, the parties agreeing that the question raised should be presented by the suit in its present form. Defendant filed a general and a special demurrer.

Plaintiffs amended to meet the special demurrer. There was no dispute on the facts. The case was tried upon the demurrer, and upon the petition as amended and the answer and a stipulation as to other facts not otherwise appearing in the record. These facts so agreed upon are as follows:

"It is agreed between the parties that plaintiffs made duplicate of their returns to the United States for the year 1929 to the State of Georgia, and paid the tax shown thereby to be due the State of Georgia, except that in the returns made to the State of Georgia plaintiffs deducted from the income returned to the United States the alleged profits set up in the petition realized from the sale of the Coca-Cola stock described in the petition, which plaintiffs contend is non-taxable and which defendant contends is taxable. Plaintiffs paid the United States the tax computed without the aforesaid deduction."

The judge overruled the demurrer and granted an injunction as prayed, stating in his judgment that "the court is of the opinion that the statute in question is retroactive and violates the constitution of Georgia." To this judgment the tax-commissioner excepted.

The defendant contends that the Boykin act as it applies to the profits sought to be taxed is not unconstitutional as being retroactive, and in support of this contention he relies upon two propositions: First, the profits on all this stock are not capital gain, but are income, and they became income when they were realized, that is, when the stocks were sold. These profits, therefore, accrued or were realized, as income in February and October, 1929. That is to say, they became a part of the gross income of plaintiffs for 1929 during those months of that year. Second, the Boykin act taxes one fourth of the taxpayer's net income for 1929, and such income was not ascertainable until the end of the year. The tax was then to be levied upon one fourth of the total net income for the year. The whole income for 1929 did not come into existence until December 31. The act became effective on August 22, on something that did not exist until December 31, and therefore could not be retroactive as to items going to make up the gross income that accrued before August 22, but nevertheless went to make up the whole income for the entire year.

The question arising here is, what is income under the Boykin act? Section 1 of the act provides that "there shall be levied and

collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth." Section 2 provides that taxpayers shall make to the State tax-commissioner duplicates of their returns to the United States. And it is provided that the tax paid to the State shall be one-third of that paid to the United States. The Boykin act adopts by reference the Federal income-tax act, making it effective as the law of this State, with certain changes which are immaterial relatively to the controlling question in this record, which were intended to adapt it to our conditions and to carry out the purpose of the legislators. The Georgia law, except for the changes just referred to, is identical with the Federal law. And inasmuch as the Supreme Court of the United States has dealt with this question in construing and applying the Federal law, the question naturally arises, in view of the authoritative decisions by the Supreme Court of the United States upon questions arising under the Federal statute, what is income under the Federal law? The Federal law of force when the Boykin act was adopted was the revenue act of 1928. That act provides that there shall be levied, collected, and paid for each taxable year, upon the net income of every individual, a tax at certain specified rates. 26 U. S. C. A. § 2011. It defines gross income, from which net income is arrived at, as including "gains, profits and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, . . or sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property, .. . or gains or profits and income derived from any source whatever." 26 U. S. C. A. § 2022. The act further defines the basis for determining gain or loss from sales of property as follows: "The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property. . . The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be: (1) the cost of such property . . or (2) the fair market value of such property as of March 1, 1913, whichever is greater." 26 U. S. C. A. 2113 (a), (b).

This is the law of the United States which the General Assembly has made the law of Georgia, with the slight changes just referred

to, which changes it is not material to state here or consider. Under its provisions, profit from the sale of property is income for the year in which the sale is made. Such profit is the difference between the cost and the sale price, if the property was bought after March 1, 1913. If it was bought before that date, the profit is the difference between the sale price and the cost, or the value on March 1, 1913, whichever is greater. The date given is fixed for the reason that the income-tax amendment to the Federal Constitution did not go into effect until March 1, 1913. Thus, under the Federal law, profits derived from the sales of property, including corporate stock, are income under all the income-tax acts, and such profits are measured by the difference between the cost, or value as of March 1, 1913, and the amount realized from the sale. And such profits become income only when the sale is made. They may exist before in the form of increased value. They get to be income only at the time of realization by sale. And the Supreme Court of the United States has defined income thus: "Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets." Eisner v. Macomber, 252 U. S. 189 (40 Sup. Ct. 189, 64 L. ed. 521, 9 A. L. R. 1570). In Merchants L. & T. Co. v. Smietanka, 255 U. S. 517 (41 Sup. Ct. 386, 65 L. ed. 751, 15 A. L. R. 1305), the court quoted and approved the foregoing definition from Eisner v. Macomber, saying further: "In determining the definition of the word 'income' thus arrived at, this court has consistently refused to enter into the refinements of lexicographers or economists, and has approved, in the definition quoted, what it is believed to be the commonly understood meaning of the term which must have been in the minds of the people when they adopted the 16th amendment to the constitution." And still further in the Smietanka case the court said, laying down the rule as to when such profits become income: "We continue entirely satisfied with that definition [the one quoted above from Eisner v. Macomber], and since the fund here taxed was the amount realized from the sale of the stock in 1917, less the capital investment as determined by the trustee as of March 1, 1913, it is palpable that it was a 'gain or profit' 'produced by' or 'derived from' that investment, and that it 'proceeded' and was 'severed' or rendered severable

from it by the sale for cash, and thereby became that 'realized gain' which has been repeatedly declared to be taxable income within the meaning of the constitutional amendment and the acts of Congress." See also Lynch v. Hornby, 247 U. S. 339 (38 Sup. Ct. 543, 62 L. ed. 1149). While this case differs on its facts from the present case, a principle is there laid down that is applicable here—that unrealized value may exist which is not taxable as income, but which does become taxable immediately upon its present realization by the owner of the property; and the principle.is stated generally that it is "equally clear that Congress was at liberty under the amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word, after the adoption of the amendment." It seems to follow that accrued profits do not become income until realized by sale, but upon such realization they are taxable immediately as income; that is, profits, when they are realized, are taxable income under the Federal law regardless of when they accrued, if such accrual was after March 1, 1913.

In Black on Income and Other Federal Taxes (4th ed.), 28, § 22, it is said: "On general principles and irrespective of explicit constitutional limitations, a statute imposing an income tax may subject to taxation the income of the citizen for the whole of the current year in which the statute is passed, that is, not only so much of the income as accrued from the date of the enactment of the law to the end of the year, but also that portion which accrued or was earned from the beginning of the year to the date of the law. For the year's income is treated and considered as one entire thing, not as made up of several portions or items. And hence, although the statute might be called retroactive in its operation upon a part of the first year's income, it is not restrospective in such a sense as to render it unconstitutional." See also the authorities cited in the note to this excerpt from the text. And a similar principle is stated in Ruling Case Law, as follows: "An income-tax law is not retroactive because it includes all incomes from the beginning of the year in which it is passed, and from the sale of real estate purchased within three years previously." 25 R. C. L. 795. We can not attempt to take up and discuss or even set forth the substance of the numerous decisions and other authorities cited in the able briefs of counsel for the plaintiffs and the defend-

ant.  The plaintiffs themselves, without objection, paid tax on the profits involved here to the Federal Government, though nearly all of such profits accrued prior to the effective date of the revenue act of 1928.  And after consideration of the question, we have concluded that the profits on the stock involved here became income when they were realized; that is, when the stocks were sold, and consequently are not capital gain.  And these profits accrued or were realized as income in February and October, 1929; that is to say, they became a part of the gross income of plaintiffs for 1929 in those months of that year.  The Boykin act taxes one fourth of the income for 1929.  That income was not ascertainable until the end of the year.  The tax was then to be levied upon one fourth of the net income for the year.  The whole income for 1929 did not come into existence until December 31, 1929.  That is, the act became effective on something that did not exist until December 31, and therefore was not retroactive as to items going to make up the gross income that accrued before August 22, but went to make up the whole income for the year.

What is said above embodies the conclusions of Russell, C. J., and Beck and Hines, JJ., who, for the reasons stated, are of the opinion that the act in question here was not retroactive in the sense in which that term is used in our constitution, nor open to any of the constitutional objections that are raised to it.

ATKINSON and HILL, JJ., concur in the ruling that the profits realized from the sale of the stock in October, 1929, were taxable under the act, but can not concur in the opinion of the three members of the court named above, that the profits realized by the sale of the stock in question in February, 1929, were taxable, being of the opinion that such a construction of the act renders it retroactive and unconstitutional.

GILBERT, J., is of the opinion that neither the profits realized by the sale of the stock in February nor the profits realized by the sale of the stock in October were taxable, and therefore dissents from the ruling made in the second headnote.

The judgment is *affirmed in part* by operation of law, and *reversed* in so far as the court below granted an injunction restraining the enforcement of the tax upon profits arising upon the sale of stock by the plaintiff Glenn in October, 1929.

GILBERT, J., dissenting.  The principle that in determining the

constitutionality of statutes all doubts should be resolved in favor of upholding the statute, also the further principle that where two constructions are permissible that should be adopted which is consistent with constitutionality, are acknowledged as sound and binding upon the courts. However, this policy has at times led the courts into extremes which on review do not appear to be altogether sound or as affording to the citizen his just rights under the constitution. While it is extremely important to uphold the power of the government to legislate over the citizen and his property, it is equally important that the constitutional rights of the citizen be preserved. I am unable to accept the theory that even the sovereign State has the power by fiat of its legislative department or by judicial construction to change property into income, and it seems to me that the contrary must necessarily be at least indirectly permitted if the contentions of the State tax-commissioner are upheld. In this case it is sought to levy an income tax upon the increased value of corporate stocks purchased in years previous, and sold in 1929, where it is conceded by all parties that the entire appreciation in the stock, or profit, realized on the sale, accrued prior to January 1, 1929. The taxing authorities insist on the right to levy and collect the tax on the theory that the stock was sold in February and October, 1929, and not until the sales were the profits on the stocks realized; and further, that the tax was levied on the total net income of taxpayers, computed as of December 31, 1929. It is contended that "the entire net income of any taxpayer for 1929 was not ascertainable until December 31 of that year." The whole case of the tax-commissioner must stand on that theory or contention. The brief filed on his behalf contains the following: "The Boykin act taxes one fourth of the taxpayer's net income for 1929. Such income was not ascertainable until the end of the year. The tax was then to be levied upon one fourth of the total net income for the year. The whole income for 1929 did not come into existence until December 31. The act became effective on August 22 on something that did not exist until December 31, and therefore could not be retroactive as to its items going to make up the gross income that accrued before August 22, but nevertheless went to make up the whole income for the entire year." Of course it can not be ascertained what the "entire net income" is for the year until the end of the year. In this case there are no disputed

facts, and all agree that the entire appreciation in value and profit derived by the sale accrued prior to 1929, although realized, as to Bradley and Turner, in February, 1929, and as to Glenn in October, 1929. It does not appear that either of these transactions was part of a business of buying and selling stocks. Each appears to be a separate, individual transaction. It can be determined whether the profits are really "income" or vested property rights which accrued previously to the enactment of the tax law. It is obvious that the profit, as to all three of the taxpayers, had accrued before the passage of the income-tax law, and as to Bradley and Turner the profits had been realized theretofore.

Since it is agreed that the profits did not increase after the first day of January, 1929, it follows that the profits in each instance have been definitely ascertained. It must be assumed that it was not the legislative intent to tax property, but only income. In *Waring* v. *Savannah,* 60 *Ga.* 100, this court, discussing the difference between property and income, said: "The fact is, property is a tree; income is the fruit; labor is a tree; income, the fruit; capital the tree; income, the fruit. The fruit, if not consumed as fast as it ripens, will germinate from the seed which it encloses, and will produce other trees, and grow into more property; but so long as it is fruit merely, and plucked to eat, and consumed in the eating, it is no tree, and will produce itself no fruit." This illustration has been adopted in many States and by the Supreme Court of the United States in Lynch v. Turrish, 247 U. S. 221 (38 Sup. Ct. 537, 62 L. ed. 1087). "The fundamental relation of 'capital' to 'income' has been much discussed by economists, the former being likened to the tree or the land, the latter to the fruit or the crop; the former depicted as a reservoir supplied from springs, the latter as the outlet stream, to be measured by its flow during a period of time." Eisner v. Macomber, 252 U. S. at p. 206 (supra). The principle was reasserted in *Featherstone* v. *Norman,* 170 *Ga.* 370 (153 S. E. 58, 70 A. L. R. 449). This distinction constituted the real basis upon which the Georgia income tax was declared by this court to be constitutional and valid. But for that distinction the act would have run counter to the constitution of Georgia, which requires: "All taxation shall be uniform upon the same class of subjects and ad valorem on all property subject to be taxed," etc. Whatever may have been held

in other jurisdictions, it would seem that these principles are fixed in Georgia. The increased value of the stock sold, all of which had accrued prior to January 1, 1929, had become property vested in the owners and could not be taxed as income under provisions of the statute enacted and approved in August, 1929. The property right in the profit had become vested before the passage of the act. The trial judge placed his judgment squarely on this fact. Under *Ross* v. *Lettice,* 134 *Ga.* 866 (68 S. E. 734, 137 Am. St. R. 281), approved in *Wilkins* v. *Savannah,* 152 *Ga.* 638, 646 (111 S. E. 42), it seems clear that to permit the collection of the tax the legislation would be retroactive.

A very similar question was before the Supreme Court of Wisconsin, two cases being considered at the same time: State ex rel. Bundy *v.* Nygaard, 163 Wis. 307 (158 N. W. 87, L. R. A. 1917E, 563). In that case corporate stock was purchased on September 1, 1907, and sold on February 20, 1914, at a profit. It was conceded by all parties that there was no difference between the value of the stock on January 1, 1911, and the date of its sale, February 20, 1914; therefore the entire appreciation on the stock occurred between the dates of purchase, September 1, 1907, and January 1, 1911. The increased profit was assessed as income subject to taxation in 1911, the year in which the act was adopted. The Supreme Court of Wisconsin decided against the taxing authorities. In the opinion the following comment was made: "In the present case it appears without dispute that the relator, on January 1, 1911, owned stock, which he had purchased as an investment more than four years previously, which was of the value of $214,000, and that on February 20, 1914, he sold the same for $214,000. Upon these facts the court now reaches the conclusion that there is in fact no 'income' in the present case within the meaning of that word as used in the constitution. The constitution (§ 1, art. 8) permits the taxation of 'incomes,' and the statute (Wis. Stat. 1913, §§ 1087m1 to 1087m29) provides for the levying of a tax upon 'incomes' received .during the year. The word 'income' has a definite, well-understood meaning. No attempt was made to define it in the constitutional amendment, for the reason that it carried its meaning with it. That meaning was and is the 'common, ordinary meaning' as the word is used in everyday life. Van Dyke *v.* Milwaukee, 159 Wis. 460, 146 N. W. 812, 150 N. W. 509. In brief,

it may be said to be the profit or gain derived from capital or labor or from both combined. Stratton's Independence v. Howbert, 231 U. S. 399, 58 L. ed. 285, 34 Sup. Ct. Rep. 136; Income Tax Cases, 148 Wis. 456-513, L. R. A. 1915B, 569, 134 N. W. 673, 135 N. W. 164, Ann. Cas. 1913A, 1147. It must be gain or profit, and it must be money or something equivalent thereto. Income Tax Cases, supra. 'The income-tax law does not seek to reach property or an interest in property as such, but to reach incomes having a situs within the State, or growing out of a privilege exercised or occupation conducted within the State.' State ex rel. Manitowac Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111, 152 N. W. 848. 'Income in the sense of tax laws is not the capital or stocks of goods in which the capital may be expended.' United States Glue Co. v. Oak Creek, 161 Wis. 211, 153 N. W. 241 [Ann. Cas. 1918A, 421]. When the income-tax law was first passed in 1911 the stock in question was held by the plaintiff, and was then of the value of $214,000. This fact is admitted to be established. In the judgment of the court all of this was capital, or, in other words, property. Its status was fixed. No part of it could be made into income by legislative enactment. It was subject to taxation as property under the uniformity rule, but not otherwise."

In these cases it was held that the legislature can not by enacting an income-tax law make that income which has acquired a fixed status as capital. In the Nygaard case stock was purchased in 1907, and by 1911 (the year when the tax act in question was passed) had increased in value to the amount for which it was sold in 1914, so that no proportional part of the increase occurred after the passage of the act, in consequence of which no part of the price was income for 1914, and it could not be made such by legislative enactment. In Gray v. Darlington, 15 Wall. 65, 21 L. ed. 46, it was held that the advance in value of property during a period of years over its cost, and realized by a sale, was not subject to taxation as gains, profits, or income for the year in which the property was sold, but rather that the advance in value constituted an increase of capital. In reaching this conclusion Mr. Justice Field, speaking for the majority of the court, among other things said: "The advance in the value of property during a series of years can in no just sense be considered the gains, profits, or income of any other particular year of the series, although the

entire amount of the advance be at one time turned into money by a sale of the property. The statute looks, with some exceptions, for subjects of taxation only to annual gains, profits, and income. Its general language is 'that there shall be levied, collected, and paid annually upon the gains, profits, and income of every person,' derived from certain specified sources, a tax of 5 per cent., and that this tax shall be 'assessed, collected, and paid upon the gains, profits, and income for the year ending the 31st of December next preceding the time for levying, collecting, and paying said tax.' 14 Stat. at L. 477, 478, § 13, chap. 169. This language has only one meaning, and that is that the assessment, collection, and payment prescribed are to be made upon the annual products or income of one's property or labor, or such gains or profits as may be realized from a business transaction begun and completed during the preceding year. . . The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of the tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as an increase of capital. The rule adopted by the officers of the revenue in the present case would justify them in treating as gains of one year the increases in the value of the property extending through any number of years, through even the entire century. The actual advance in value of property over its cost may, in fact, reach its height years before its sale; the value of the property may, in truth, be less at the time of the sale than at any previous period in ten years,—yet, if the amount received exceed the actual cost of the property, the excess is to be treated, according to their views, as gains of the owner for the year in which the sale takes place. We are satisfied that no such result was intended by the statute."

In the annotation to the Wisconsin cases, contained in L. R. A. 1917E, beginning at p. 566, the annotator quotes from Gray v. Darlington what is set out above. The Supreme Court in the Gray case was dealing with an income-tax act of an earlier date, differing in its language from the present income-tax law. That fact, however, does not detract from the reasoning of the court as quoted above. This distinction was pointed out in Doyle v. Mitchell, 247 U. S. 179 (38 Sup. Ct. 467, 62 L. ed. 1054), and

Hays v. Gauley Mountain Coal Co., 247 U. S. at p. 191 (38 Sup. Ct. 470, 62 L. ed. 1061). However, in Lynch v. Turrish, supra, the Supreme Court again referred to Gray v. Darlington and to the fact that it arose under the income-tax law of 1867 instead of the present income-tax law, and quoted from Mr. Chief Justice Field portions of the opinion, as I have done above; and then said: "This case has not been since questioned or modified." The court went further and said: "The Government feels the impediment of the case and attempts to confine its ruling to the exact letter of the Act of March 2, 1867, and thereby distinguish that act from the Act of 1913 and give to the latter something of retrospective effect. Opposed to this there is a presumption, resistless except against an intention imperatively clear. The Government, however, makes its view depend upon disputable differences between certain words of the two acts. It urges that the Act of 1913 makes the income taxed one 'arising or accruing' in the preceding calendar year, while the Act of 1867 makes the income one 'derived.' Granting that there is a shade of difference between the words, it can not be granted that Congress made that shade a criterion of intention and committed the construction of its legislation to the disputes of purists. Besides, the contention of the Government does not reach the principle of Gray v. Darlington, which is that the gradual advance in the value of property during a series of years in no just sense can be ascribed to a particular year; not therefore as 'arising or accruing,' to meet the challenge of the words, in the last one of the years, as the Government contends, and taxable as income for that year or when turned into cash. Indeed, the case decides that such advance in value is not income at all, but merely increase of capital and not subject to a tax as income." And see also Southern Pacific Co. v. Lowe, 247 U. S. 330, 337 (38 Sup. Ct. 540, 62 L. ed. 1142); Lucas v. Alexander, 279 U. S. 573 (49 Sup. Ct. 426, 73 L. ed. 851, 61 A. L. R. 906); Blodgett v. Holden, 275 U. S. 142 (48 Sup. Ct. 105, 72 L. ed. 206); Untermeyer v. Anderson, 276 U. S. 440 (48 Sup. Ct. 353, 72 L. ed. 645). In England the question seems to have turned upon whether the seller of property on which profit is derived made the sale as a part of the business or trade carried on. Where the sale constitutes a part of the business of the seller, the English rule is that profits realized within the year for which

the tax is levied are subject to the tax. On the other hand, where the sale is not a part of the business, but is in effect merely a sale by a private owner, the profit is not taxed as income.

Counsel for the Tax Commissioner rely very largely upon the two cases of Eisner v. Macomber, 252 U. S. 189, 9 A. L. R. 1570, and Merchants L. & T. Co. v. Smietanka, 255 U. S. 517, 15 A. L. R. 1305 (supra). In both of these cases it was held that the difference in value of corporate stocks on the first day of March, 1913, and the day of sale in the taxing year could legally be taxed as income. It should be noted that in neither of these cases, as reported, does it appear as a settled fact or otherwise that the entire appreciation in value accrued prior to 1917, the taxing year. Moreover, whatever may be the construction of the Federal income-tax act by the Federal courts, such decisions can not be binding on this court in the construction of the Georgia income-tax act on the question of what is capital and what is income. I do not overlook the fact that the Georgia legislature expressly enacted a tax "similar to that of the United States." The Congress of the United States and the Federal courts are not confronted with the constitutional provisions contained in the Georgia constitution with regard to uniformity in taxation on property. Moreover, they are not confronted with a previous binding decision that the income-tax law is upheld solely on the theory that the income tax does not apply to property, but only to income. In the matter of judicial authority as to construction of the word "income" I have cited from the highest authority, to wit, the Supreme Court of the United States, and the logical argument of the Supreme Court of a sister State. For these reasons I am convinced that to construe the law as urged by the tax-commissioner in this case would give to the Georgia income-tax act a construction not intended by the General Assembly. It would tax capital or property as income, which can not be made income by legislative act or construction. It would bring the act in conflict with the clause of the Georgia constitution prohibiting retroactive legislation, and also in conflict with the due-process clause of the United States constitution.