(No. 44164.—

TERRANCE R. MITCHELL *et al.,* Appellees, v. GEORGE E. MAHIN, Director, Department of Revenue, Appellant.

*Opinion filed April 17, 1972.—Rehearing denied May 25, 1972.*

DAVIS and SCHAEFER, JJ., dissenting.

WILLIAM J. SCOTT, Attorney General, of Chicago (WILLIAM P. SUTTER and JOSEPH O. RUBINELLI, Special Assistant Attorneys General, and FRANCIS T. CROWE and CALVIN C. CAMPBELL, Assistant Attorneys General, of counsel), for appellee.

McDERMOTT, WILL & EMERY, of Chicago (JOHN S. PENNELL, HAMILTON SMITH, DON S. HARNACK and WILLIAM G. MIGLEY, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, George E. Mahin, Director of Revenue, appeals from the judgment of the circuit court of Cook County entered in plaintiffs' action for declaratory judgment. The effect of the judgment from which defendant appeals is to make applicable to the assets involved in this case the August 1, 1969, valuation date which this court, in *Thorpe v. Mahin, 43 Ill.2d 36,* applied to the computation of gains or losses realized from the sale of capital assets.

In their complaint for declaratory judgment plaintiffs allege that the defendant in the "Instructions for Form IL-1040, 1969" and in Regulation 202—2(d)(1) seeks to restrict the August 1, 1969, valuation limitation to capital assets as defined in section 1221 of the Internal Revenue Code of 1954 (26 U.S.C., sec. 1221) and pray that if the Illinois Income Tax Act (Ill.Rev.Stat. 1969, ch. 120, par. 1—101, *et seq.*) is construed so as to impose a tax "upon the accumulation of or the appreciation in value of property occurring before August 1, 1969," that the Act, in that respect, be held unconstitutional.

The plaintiffs are five taxpayers, and the record contains a stipulation of the following facts.

On November 21, 1969, plaintiff John A. Peterson sold his farm for $65,000, payable $5,000 on November 21, 1969, $10,000 on March 1, 1970, and the balance in

10 equal annual installments. Throughout his period of ownership Peterson had engaged in the occupation of farming this farm. On July 31, 1969, the farm had a fair market value of $63,927.50.

On October 30, 1969, Frederick W. Wendnagel sold a one-fourth interest in improved commercial rental real estate for a net consideration of $123,497.50. He acquired this interest on September 1, 1947, and on October 30, 1969, his remaining undepreciated cost for the property was $18,487.18. On July 31, 1969, the fair market value of Wendnagel's interest in the building was $122,317.18.

Plaintiff Terrance R. Mitchell voluntarily participated in the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Co. employees from June 1, 1960, to July 7, 1969, when he resigned his position and his participation in the fund ceased. On August 15, 1969, he received a lump sum distribution from the Fund of 134 shares of the stock of Sears, Roebuck and Co. and cash in the amount of $1,850.31. The shares of stock were purchased by the Fund for a total cost of $6,793.80, had a market value of $8,710 on July 31, 1969, and at the time of distribution had a market value of $9,061.75. The total of the contributions made by Mitchell to the Fund, and not withdrawn prior to August 15, 1969, was $3,805.75.

Plaintiff Asalee Laborn also participated in the Sears profit-sharing and pension fund from May 15, 1958, until her termination as a Sears employee on September 15, 1969. On September 24, 1969, she received a lump sum distribution having a value of $9,874.84, which consisted of 110 shares of Sears stock having a value of $7,755 and cash in the amount of $2,119.84. The shares of stock were purchased by the Fund at a total cost of $4,973.10 and on July 31, 1969, had a fair market value of $7,150 and on September 24, 1969, had a fair market value of $7,755. The total of the contributions by Mrs. Laborn to the Fund and not withdrawn prior to September 24, 1969, was $2,514.

Plaintiff Ernest J. Nassos was a member of the law firm of McDermott, Will and Emery from January 1, 1966, to April 30, 1969, during which time he participated in the firm's profit sharing plan. He contributed $1,051.34 for 1966, $1,110 for 1967, $1,140 for 1968, and $210 for the part of the year ending April 30, 1969—a total contribution to the plan of $3,511.34. After August 1, 1969, he received $3,769.01 from the plan. The value of Nassos' interest in the plan on July 31, 1969, was $3,333.62.

It is further stipulated that all five plaintiffs are residents of Illinois and each of them received income during the period August 1 through December 31, 1969, which was taxable under the Illinois Income Tax Act. The parties, in the pleadings and briefs, have treated the Peterson and Wendnagel properties as assets which fall within the scope of section 1221, the Mitchell and Laborn transactions as being within the scope of section 402, and the Nassos matter as subject to sections 72 and 402 of the Internal Revenue Code of 1954. Without passing upon the correctness of the positions taken, for purposes of this opinion, we adopt them.

The defendant Director argues that we should overrule that portion of *Thorpe* which found a legislative intent to establish an August 1, 1969, valuation limitation, and the major portion of his brief is devoted to this contention. He argues that the issue of legislative intent was not presented in *Thorpe;* that the language of the Act shows that no such valuation limitation was intended; that other legislative proposals and the Leland Committee Report all failed to provide any express valuation limitation; that the record of the hearings before the Senate Public Finance Committee fails to indicate such an intent; that a proposed amendment to the Act containing a valuation limitation was defeated; that the valuation limitation leads to "totally unrealistic economic results"; and that the valuation limitation is unfair.

The defendant's argument obviously presumes that in

*Thorpe* we felt compelled to find a legislative intent to establish an August 1, 1969, valuation limitation in order to avoid constitutional problems which might stem from making the income tax applicable to appreciations in value occurring before August 1, 1969. *Thorpe* was decided without reaching the question of whether retroactive application rendered the Act unconstitutional, and the language to which defendant refers is clearly a discussion of the divergent and conflicting decisions on the subject and not a holding of this court with respect to the issue.

Upon consideration of the argument that in *Thorpe* we misconstrued the legislative intent, we conclude that nothing is before us in this case of which we were unaware at the time *Thorpe* was decided. Furthermore, after this court has construed a statute, that construction becomes, in effect, a part of the statute and any change in interpretation can be effected by the General Assembly if it desires so to do. *Susemiehl v. Red River Lumber Co., 376 Ill. 138; Knierim v. Izzo, 22 Ill.2d 73, 80; Schwarz v. Schwarz, 27 Ill.2d 140, 150.*

The General Assembly has seen fit to express itself explicitly on the question by amending section 203 of the Income Tax Act in which "base income" is defined (Ill. Rev.Stat. 1971, ch. 120, par. 2—203), and, with exceptions not here relevant, has enacted the August 1, 1969, valuation limitation enunciated in *Thorpe*. "While it is ordinarily assumed that an amendment is intended to change the law as it formerly existed, that assumption is not controlling. (See *Scribner v. Sachs, 18 Ill.2d 400, 411.)* To ascribe such a purpose to all amendatory legislation would make it hazardous or impossible to clarify existing ambiguities so that future misinterpretation could be avoided or the recurrence of an erroneous judicial interpretation prevented." *(Roth v. Northern Assurance Co. 32 Ill.2d 40, 50.)* For the reasons stated in *Thorpe,* and for the further reason that the General Assembly by affirmative action has indicated its approval of our decision, we

will not now hold that the Illinois Income Tax Act as originally enacted did not contemplate an August 1, 1969, valuation limitation.

Defendant argues that if the General Assembly "intended to establish an August 1, 1969, valuation limitation, its application should be limited to the determination of gain or loss from sales and exchanges of capital assets." This contention is based on the fact that *Thorpe* dealt only with capital assets and capital gains and losses. The decision in *Thorpe* was restricted to capital assets for the obvious reason that the issues, as formulated, involved capital assets and did not purport to consider every type of property with respect to which the issue of a valuation date might arise.

Defendant contends next that if the scope of the August 1, 1969, valuation limitation is extended to "all property" it will result in a "staggering revenue loss" and an "administrative nightmare" for the State and its taxpayers. It argues further that where "an agency charged with the administration of a legislative enactment has construed that statute contemporaneously with the enactment thereof, that construction is entitled to great weight when determining legislative intent." Obviously, the defendant Director, not without precedent in the taxation of income, promulgated regulations designed to produce the maximum in revenue, and toward that end construed *Thorpe* as narrowly as possible in order to render the August 1, 1969, valuation date inapplicable to any capital assets except those falling within section 1221 of the Internal Revenue Code. The Director's interpretation notwithstanding, we hold the rationale of *Thorpe* to be applicable to the types of assets involved in this action. Although the parties have discussed loss carryovers, inventory assets, and installment and other accounts receivable, the record presents no issue with respect to these types of assets and this opinion does not purport to decide any questions with respect to them.

In the trial court the defendant questioned the right of the plaintiffs to maintain this declaratory judgment action because they have an appropriate remedy under the Illinois Income Tax Act and the Administrative Review Act. Defendant has abandoned this argument because "the issue here presented is one of vast importance to the State and to taxpayers generally, and is a unique issue which demands immediate resolution."

The judgment of the circuit court of Cook County to the extent that it holds that the August 1, 1969, valuation limitation applicable to the property here involved is affirmed.

*Judgment affirmed.*

MR. JUSTICE DAVIS, dissenting:

I dissent from the conclusion reached by the majority. As indicated in that opinion, the defendant Department's principal contention is that *Thorpe (Thorpe v. Mahin, 43 Ill.2d 36)* should be overruled to the extent that the court found a legislative intent to establish an August 1, 1969, valuation limitation date. I agree with the Department in this respect.

In the briefs filed herein, the Department contends that the Illinois Income Tax Act imposes a tax measured by income, and that "income" arises only when it is realized. The fact that such income may, in part, represent gains which had accrued during years prior to the enactment of the Act, does not render the tax retroactive. The plaintiffs, on the other hand, contend that a tax on income, which includes gains in value attributable to years prior to the enactment of a taxing statute renders such a tax retroactive, and in the case of the Illinois Income Tax it would be sufficiently retroactive so as to be unconstitutional by reason of section 1 of article IX of the Illinois constitution of 1870 and the equal protection clause of the fourteenth amendment to the United States constitution.

I believe that implicit in the court's holding in *Thorpe,* in regard to the nontaxation of the total capital gain when a part thereof was attributable to an increase in value prior to August 1, 1969, was the expressed concern for the retroactive nature of such a tax and the resulting doubts thereby arising as to the validity of such a tax Act. The finding in *Thorpe* that the legislature intended an August 1, 1969, valuation date for the computation of capital gains and losses can have no basis other than the misapprehension that without such a finding the tax would have been retroactive and, perhaps, unconstitutional.

In *Thorpe,* at page 50, the court commenced the discussion of this issue by stating, "For the reasons hereafter given, ***" and it concluded the legislative intent to be that in the computation of capital gains and losses there should be an August 1, 1969, valuation limitation date. The first reason assigned was that statutes are not to be construed retroactively unless this clearly appears to be the legislative intent. The court questioned whether a tax which clearly was intended to be prospective should be made retroactive by "nonspecific language" which would permit a basis date, for purposes of computing gains and losses, prior to the effective date of the Act. It stated that when the basis of property was to be determined retroactively this should be set forth in specific language in the statute, and that our legislature's intent to do so was not clearly expressed. 43 Ill.2d at 51.

As the second reason for finding legislative intent, the court set forth the rule that it was its duty to interpret a statute so as to avoid, if possible, a construction that would raise doubt as to its validity. On pages 51 and 52, it stated: "It is questionable that the General Assembly, by the nonspecific language which it employed, intended to adopt the basis dates from the Internal Revenue Code when such dates under our newly enacted Income Tax Act would raise doubts as to its validity." It concluded, on page 52, that whether the retroactive application of a tax

was so oppressive as to transgress constitutional limitations, was a matter that had to be determined under the particular circumstances of each case. It recognized that revenue laws may be retroactive, but noted that there was a point of time when such retroactivity was beyond the legislative power.

The two foregoing reasons—a statute will not be construed retroactively unless clearly so-intended, and an interpretation will be avoided which will render the validity of a statute in doubt—were the only ones given for the Court's finding of legislative intent. Both reasons were based upon the assumption that without the valuation limitation date for the purpose of determining basis, the tax would be rendered retroactive. From this the court concluded that the income tax statute must contain specific language which would suggest such retroactivity. Next, the court noted that our Act specifically incorporated the terms of the Internal Revenue Code, and that under the provisions thereof the basis for taxation of certain property could go back over 56 years from the date of the enactment of the Illinois tax Act. It implied doubt as to the validity of such "retroactivity" in the revenue laws.

It seems very probable from the court's analysis in *Thorpe* that it based its finding of legislative intent upon the assumption that to permit a basis date prior to the effective date of the Act and to permit a tax on accretions in value prior to such date would render the tax retroactive and of questionable validity. The cases which the court relied upon in *Thorpe,* however, do not support this assumption. Rather, they support the opposite conclusion—that the establishment of a basis date prior to the effective date of the tax Act, does not, in fact, render it retroactive.

In *Thorpe,* the court cited *City National Bank of Clinton v. Iowa State Tax Com. (1960), 251 Iowa 603, 102 N.W.2d 381,* as authority for the rule that there is a point of time beyond which revenue laws may not be

retroactively applied. In *Bank of Clinton,* however, the court held that the imposition of a tax upon capital gains, including therein accretions in value prior to the effective date of the tax Act was not a retroactive tax. The court referred to those cases which held that a retroactive tax may, or may not, be constitutional, depending upon the circumstances involved. It also reffered to *State ex rel. Bundy v. Nygaard (1916), 163 Wis. 307, 158 N.W. 87,* as suggesting that a tax upon increases in value accruing prior to the enactment of the State income tax law was a retroactive tax. It then referred, however, to what it called the majority and more recent view to the contrary.

In *Bank of Clinton,* the court adopted the view that unrealized value may exist which is not taxable as income, but that it becomes taxable as income immediately upon, and only upon its realization by the owner thereof; that a tax measured by income is measured by realized gain; and that such realized gain is taxable in the year of its realization regardless of when it accrued. The rationale for the court's decision was "that such taxing act is not retroactive, that unrealized capital gains are not separate property, and that until the gain or profit is taken there is no taxable income." (251 Iowa 603, 613, 102 N.W.2d 381, 386.) In so holding, the court indicated that it was following the views expressed in *Norman v. Bradley (1931), 173 Ga. 482, 160 S.E. 413* (cited with approval in *MacLaughlin v. Alliance Ins. Co. (1932), 286 U.S. 244, 76 L.Ed. 1083, 52 S.Ct. 538); Fidelity & Columbia Trust Co. v. Reeves (1941), 287 Ky. 522, 154 S.W.2d 337;* and *Fullerton Oil Co. v. Johnson (1934), 2 Cal.2d 162, 39 P.2d 796.*

In *Fullerton Oil Co.* the State tax statute referred to and incorporated therein provisions of the Federal tax statutes, as does our Act. In dealing with the question of accretions in value, the court stated: "Under the federal Income Tax Act the federal courts have established the principal that 'income' within the meaning of the Income

Tax Act is 'realized gain', and that such realized gain is taxable in the year of its realization regardless of when it accrued. *** We can see no constitutional difference between accretions to capital prior to the date of the taxing statute and those occurring subsequent thereto. If increases in the value of property constitute income, and constitute income in the year in which realized rather than in the years when such increases in value accrue, it would seem that constitutionally speaking it makes no difference when such increases in value accrue—whether before or after the effective date of the taxing statute." 2 Cal.2d 162, 168-169, 39 P.2d 796, 798.

In *Fullerton Oil Co.* the court cited and referred to three United States Supreme Court cases *(Lynch v. Hornby (1918), 247 U.S. 339, 62 L.Ed. 1149, 38 S.Ct. 543; Helvering v. Canfield (1934), 291 U.S. 163, 78 L.Ed. 706, 54 S.Ct. 368;* and *MacLaughlin v. Alliance Ins. Co. (1932), 286 U.S. 244, 76 L.Ed. 1083, 52 S.Ct. 538)* after which it concluded: "We are of the opinion that from the standpoint of income taxes, or taxes measured by income, "income" must be deemed to be realized gain, and that increases in value of capital assets are income in the year they are physically realized. When such increased value of capital assets came into existence is immaterial—the only question is, When was it realized?" 2 Cal.2d 162, 171, 39 P.2d 796, 800.

In *MacLaughlin v. Alliance Ins. Co. (1932), 286 U.S. 244, 76 L.Ed. 1083, 52 S.Ct. 538,* the Supreme Court, after referring with approval to the power to impose a tax upon the realization of income even though it is a result, in part, of increases in value prior to the date of the taxing act, stated: "But the constitutionality of a tax so applied, has been repeatedly affirmed and never questioned. The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an earlier period before the

adoption of the taxing act." 286 U.S. 244, 250, 76 L.Ed. 1083, 1086, 52 S.Ct. 538, 540.

In *Picchione v. Commissioner (1st cir. 1971), 440 F.2d 170,* the taxpayers sold a copyrighted item and were to receive certain monthly payments therefor. At the time of the sale, profits from copyrighted materials were treated as long-term capital gains. Subsequently, the Internal Revenue Code was amended to exclude copyrights from the definition of capital assets under the circumstances of the taxpayers' case, and this favorable tax treatment was ended. The Act provided that the amendments were to be applicable to taxable years beginning after the date of its enactment. The court held that under the amendment, the new definition was to be used in determining the character of all payments received in taxable years beginning after its enactment, and rejected the argument that the amendment applied only to copyrights transferred after the effective date.

In *Picchione* the court stated: "Retrospective taxation, even to the extent of applying a statute to impose new tax burdens on taxable events that occurred prior to the enactment of the statute, is not necessarily unconstitutional. *United States v. Hudson, 1937, 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370; Brushaber v. Union Pac. R.R., 1916, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493.* To be unconstitutional, the result must be so harsh and oppressive as to amount to a denial of due process. *Welch v. Henry, 1938, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87." 440 F.2d 170, 173.*

Finally, in the recent case of *Katzenberg v. Comptroller of Treasury (1971), 263 Md. 189, 282 A.2d 465,* the court had before it the question of the taxation of receipts under an installment sale made prior to the effective date of the State income tax law. A State income tax had been in effect in Maryland for some time but, until 1967, it had not taxed capital gains. In 1967, a new State income tax law was enacted which adopted as the base for

State income tax purposes the adjusted gross income of an individual taxpayer as determined under the Internal Revenue Code. Thus, for the first time, capital gains and losses were brought within the ambit of the Maryland tax laws.

The plaintiffs in *Katzenberg* contended that the application of the State tax to the installment sale agreements constituted a retroactive tax. The court held that the tax reaches the profits received and not the earlier sale, and that it was not a retroactive tax.

It seems clear from these cases that a tax measured by income is a tax upon realized gain. The fact that a portion of the gain may be attributable to increases in value of the income-producing items prior to the effective date of the Act, or may be attributable to something done prior to such date, does not render the taxing statute retroactive so long as the gain or profit is not "realized" until after such date. Thus, where a taxpayer, such as in *Katzenberg,* elects to receive payments from the sale of property over a period of years, the taxpayer realizes the profits therefrom as the payments are made. Where he sells a product composed of labor and inventory, he receives the profit therefrom when paid. When he sells an asset, of any nature, which has increased in value prior to the effective date of the Act, he receives or realizes the income therefrom when paid. I see nothing constitutionally or equitably wrong with such result.

The plaintiffs have sought to distinguish some of the cases referred to above on the ground that our tax is one on the "privilege" of earning or receiving income as opposed to a tax upon "income." The distinction is without merit. It is not clear, from the language of the various cases dealing with the question of when income is realized, whether the particular statutes purported to tax income or the privilege of earning or receiving income. But, in *Fullerton Oil Co. v. Johnson (1934), 2 Cal.2d 162, 39 P.2d 796,* a franchise tax act which taxed the privilege

of exercising corporate franchises within the State "measured by their net income," was under consideration, and the court stated: "We are of the opinion that from the standpoint of income taxes, or taxes measured by income, 'income' must be deemed to be realized gain, and that increases in value of capital assets are income in the year they are physically realized." 2 Cal.2d 162, 171, 39 P.2d 769, 800.

Further, the court indicated in *Thorpe,* whether our tax be characterized as an income tax, or a tax on a privilege of earning or receiving income, is of little import. It there expressly disavowed the pronouncement of *Bachrach v. Nelson (1932), 349 Ill. 579,* that the legislature was limited in its power of taxation to adding new occupations, franchises and privileges to the list contained in section 1 of article IX of our constitution. (43 Ill.2d 36, 45. See also: *Turner v. Wright (1957), 11 Ill.2d 161, 164-165;* 64 Nw. U.L. Rev. 886 (1970).) The legislature obviously felt that it had to frame the tax as a "privilege" tax because of our prior holdings. In *Thorpe* the court upheld the income tax as a nonproperty tax.

The tax, like those in the cases cited by the defendant, is "measured by net income." As stated in *Katzenberg v. Comptroller of Currency (1971), 263 Md. 189, 282 A.2d 465, 472:* "It is rather a tax measured by the yardstick of income reported for federal tax purposes ***." I would not accept the plaintiffs' argument that if the Illinois tax is upon "adjusted gross income" which includes accretions in value during a year prior to the year the tax is imposed, that it then is either a property tax or a retroactive tax.

The fallacy in the court's holding in *Thorpe* as to the legislative intent is apparent from the language of the Act itself. Section 102 of the Act states: "Except as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954 ***." (Ill.Rev.Stat. 1971,

ch. 120, par. 1—102.) Section 201(a) states that the tax imposed is to be measured by "net income." Section 202 thereafter defines "net income": "*** a taxpayer's net income for a taxable year shall be that portion of his base income for such year which is allocable to this State ***." Section 203 then defines "base income" to mean "adjusted gross income for the taxable year" in the case of individuals, and "taxable income for the taxable year" in the cases of corporations, trusts and estates. Section 203(d)(1) then provides that: "*** a taxpayer's gross income, adjusted gross income, or taxable income for a taxable year shall mean. the amount of gross income, adjusted gross income or taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code."

In *Katzenberg,* the legislature chose to define income with reference to the adjusted gross income or taxable income as determined under the Internal Revenue Code. As a result, it adopted the Federal base for determining gross income, and it included capital gains and losses as taxed under Federal laws, including the March 1, 1913, valuation date. In both *Fullerton Oil Co. v. Johnson (1934),2 Cal.2d 162, 39 P.2d 796,* and *Norman v. Bradley (1931), 173 Ga. 482, 160 S.E. 413,* the reference to the Federal revenue act was the only allusion to such a date. There was no specific mention of such a date, as there is none in our Act. I believe no additional reference is necessary for the tax basis of property to be determined as of a date prior to the effective date of the Act. It seems apparent that the taxpayer's base income was meant to be his adjusted gross or taxable income for Federal taxation purposes except as specifically modified in section 203 of our Act. This section did not contain the specific modification imposing the August 1, 1969, valuation limitation date read into the Act by the court in *Thorpe.* If there be any doubt as to the intent of the legislature as expressed by the language employed in the Act, the

abundant legislative history of the Act, referred to by the defendant, further supports the conclusion expressed above. In the hearings before the Senate Public Finance Committee held for consideration of Senate Bill 1150, which ultimately became our taxing statute, Charles W. Davis, one of the draftsmen of the Act, submitted a written statement, addressed to this particular point:

> "I invite your attention to the fact that this tax, like the Federal tax, is based on annual accounting periods, and there are always items which fall in one year which may relate to what happened in other years. Thus, there will be items of income or loss realized after August 1 which may be the result of appreciation or depreciation in value occurring before August 1—maybe years before. Similarly, there may be net operating losses realized prior to August 1 which will provide a deduction after August through the carryover provisions of the Federal Internal Revenue Code.
>
> "Some states have tried to modify this result in part by providing that, for purposes of determining gains or losses, the basis of property shall be its fair market value on the effective date of the Act, or by arbitrarily assuming that a pro rata portion of the appreciation or depreciation occurred before the effective date of the Act. However, we believe that this is neither satisfactory nor necessary. It would make administration much more difficult by departing from the federal concepts. More fundamentally, however, the concept of recognition of income for tax imposing purposes has traditionally been a "when-*realized*" approach which has been sustained by the U.S. Supreme Court even though affected by events in prior years. There will undoubtedly be taxpayers whose particular facts will cause them to complain of this result, and who will point to the precedent of other states. We have carefully considered and deliberately drafted the bill in what we believe to be the fairest and most satisfactory manner."

When Senate Bill 1150 reached the House of Representatives, an attempt was made to amend it to provide, in essence, a valuation limitation date as found by the court in *Thorpe*. This attempted amendment was defeated. The legislature understood that which seems clear from the language of the Act—that no valuation

limitation date, such as that imposed by the court in *Thorpe*—was intended.

On the issue of the legislative intent to establish a valuation limitation date, the majority states that nothing is before the court in this case of which it was unaware at the time of the *Thorpe* decision. However, I believe the court was not given sufficient opportunity in *Thorpe* to consider all of the arguments and authorities on this issue and the question of a retroactive tax. As the defendant points out, the original briefs filed in *Thorpe* did not consider the question of legislative intent to establish an August 1, 1969, valuation limitation date. Rather, even the petitioners in that case appeared to have assumed that no such legislative intent was expressed in the Act. Only a brief mention was made of this fact by the petitioners in *Thorpe* when they argued that Act actually taxed all capital gains realized after August 1, 1969, without excluding the portion thereof accumulated prior to that date. They urged that such taxation was discriminatory and that the entire Act was unconstitutional.

After submission of the case, this court entered an order on July 25, 1969, which contained a determination that the legislature intended to establish the August 1, 1969, valuation limitation date. The petitioners thereafter filed a supplemental memorandum addressed to this point. The Department then filed an answer to the supplemental memorandum of the petitioners. This was the only response which the Department had an opportunity to submit to the court on this issue. It was filed with this court on August 11, 1969, just three days prior to the filing of the full opinion by the court. A review of the briefs in the two cases indicate a much more thorough presentation of this issue to the court in the present case.

Further, in arriving at what I believe to be the proper interpretation of the Act, I am aware of Senate Bill 1135, adopted by the legislature on June 28, 1971, and approved August 9, 1971, during the pendency of this action, which

amends section 203 of the Illinois Income Tax Act, the section defining base income. (Ill.Rev.Stat. 1971, ch. 120, par. 2—203.) By its terms it is applicable to all taxable years commencing after December 31, 1970. The amendment modifies the definition of "adjusted gross income" in the case of individuals, and "taxable income" in the cases of corporations, trusts and estates, partially in the manner urged by the plaintiffs in this action. Distributions from qualified pension and profit-sharing plans which otherwise are included in adjusted gross income are to be deducted to the extent they are attributable to benefits which accrued prior to August 1, 1969. The amendment also uses an August 1, 1969, valuation limitation for purposes of capital gains, not limited merely to capital assets as defined in section 1221 of the Internal Revenue Code. In establishing this August 1, 1969, valuation limitation date, the amendment in essence provides for a deduction of any portion of a capital gain as shown for Federal income tax purposes which is attributable to appreciation in value prior to August 1, 1969, and also a deduction for any portion of depreciation recapture reflected in the Federal income tax figures, which is attributable to that portion of such depreciation taken prior to August 1, 1969. However, this August 1, 1969, valuation limitation date is applicable under Senate Bill 1135, only to individuals, trusts and estates. There is no comparable valuation limitation date for corporations.

The amendment specifically sets forth its legislative intent, as follows:

"(4) Legislative Intention. Except as expressly provided by this section, there shall be no modifications or limitations on the amounts of income, gain, loss or deduction taken into account in determining gross income, adjusted gross income or taxable income for federal income tax purposes for the taxable year, or in the amount of such items entering into the computation of base income and net income under this Act for such taxable year, whether in

respect of property values as of August 1, 1969 or otherwise." Ill.Rev.Stat. 1971, ch. 120, par. 2—203(4).

The subsequent amendment to the statute by the legislature might be viewed as indicating that the court's prior decision was not totally in accord with the legislative intent. *(People ex rel. Clark v. Village of Wheeling (1962), 24 Ill.2d 267, 268, 269; People ex rel. Spitzer v. La Salle County (1960), 20 Ill.2d 18, 28; Modern Dairy Co. v. Department of Revenue (1952), 413 Ill. 55, 66.)* Clearly, the subsequent amendment cannot be urged as evidencing the true original intent of the legislature because of the distinction it adopts between the tax treatment afforded corporations and that afforded individuals, trusts and estates with regard to the valuation limitation date.

The legislative action, subsequent to our opinion in *Thorpe,* seems clearly to express some concern over the interpretation or misinterpretation of the Act under *Thorpe.* If it was coerced by the court's misapprehension in *Thorpe* as to what constituted a retroactive tax, the legislature could repeal the amendment. If not, it can stand. However, I do not believe that this amendment is so clearly free from the coercive influence of the court's prior decision in *Thorpe,* that it can be deemed to indicate either the original legislative intent, or an intent that was not captive to the erroneous inferences in *Thorpe.*

I would overrule *Thorpe* to the extent it found that the legislature intended an August 1, 1969, valuation date. As a result, I would reverse the order of the trial court declaring that the Illinois Income Tax Act does not impose a tax upon the appreciation, accretion, or accumulation in value of any property occurring before August 1, 1969, and I would hold that it was the intent of the legislature to adopt the Federal income tax structure, except as otherwise noted in the Act.

MR. JUSTICE SCHAEFER joins in this dissent.